JOHN BROWN *v.* LYMAN H. BIGELOW AND HAWAIIAN DREDGING COMPANY, LIMITED, AN HAWAIIAN CORPORATION.

No. 1740.

SUBMITTED SEPTEMBER 27, 1927.        DECIDED OCTOBER 14, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action for damages brought by the plaintiff on account of the death of his minor son. The defendants filed separate demurrers to the complaint, each of which was sustained. Thereupon the plaintiff asked leave to file an amended complaint which, on objection by each of the defendants, was denied. There being, then, no complaint before the court and no further offer of amendment the case was ordered dismissed. The plaintiff comes here on a bill of exceptions. The two main questions are, whether the circuit court erred in sustaining the demurrers to the original complaint and in refusing to allow the amended complaint to be filed. We will consider these questions in their order.

The material averments of the original complaint are as follows: The defendant Lyman H. Bigelow was and is the superintendent of public works of the Territory of Hawaii; while acting for the Territory he entered into a contract in writing with the Hawaiian Dredging Company for the dredging of a canal in the city of Honolulu; a copy of the contract and specifications under which the canal was to be constructed is attached

to and made a part of the complaint; the dredging company, in 1921, excavated a part of said canal westward from Ala Moana road through an ocean swimming and fishing resort known as Kalia, which resort had theretofore been shallow and safe but by such excavation was made a deep channel which was unsafe for children; this excavation has a length of twelve hundred feet, a width of one hundred and thirty feet and a depth of twenty-four feet; from time immemorial the Kalia fishery had been used by the public, including children, for swimming and fishing purposes; the danger to those accustomed to use this shallow fishery which would arise from the digging of a deep channel through it was known to or ascertainable by the defendants; after the channel had been excavated it was left and allowed to remain hidden and invisible and was not provided with embankments or other means of protecting the lives of the people and citizens who were accustomed to resort to it for the purpose of fishing and swimming; the danger to the lives of such people was increased by the digging of the channel because the water of the fishery was rendered muddy, causing the location of the canal in that locality to be invisible; on May 30, 1924, the plaintiff's son, aged seven years and five months, while wading in the Kalia fishery, fell into the channel that had been excavated by the dredging company and was drowned; the cause of the death of plaintiff's son "was the negligence of the said defendants in digging, excavating and dredging a canal of the kind and dimensions aforesaid in the location aforesaid without means for the protection of the lives of the public aforesaid and in letting the said canal remain in its unprotected and dangerous condition as aforesaid, knowing that persons, especially children unable to swim, might fall into the said canal and be drowned therein;" the contract for the digging of the

canal is still in force and the Hawaiian Dredging Company is still carrying on operations thereunder.

A ground of demurrer, common to both the defendants, is that the complaint does not state facts sufficient to constitute a cause of action.

The plaintiff's primary contention is that the excavation of the channel in the Kalia fishery was a public nuisance and that therefore the defendants are liable under the law pertaining to that subject. The Waikiki drainage canal is a public improvement authorized by legislative enactment. It is not contended that the legislature in enacting the statutes relating to the canal exceeded its authority or that the channel through the Kalia fishery was constructed in an improper manner. Under these circumstances we think the excavation of the channel in question was not a public nuisance.

In discussing this subject Joyce on the Law of Nuisances, section 69, says: "The rule may be stated to be that where one has the sanction of the State for what he does unless he commits a fault in the manner of doing it, he is completely justified, provided the legislature has the constitutional power to act. And the legislature may, except so far as it may be limited by constitutional restrictions, when deemed necessary for the public good, permit or require that to be done which would, on common law principles, and without the statute, be deemed a nuisance. And it is a general rule that where an act is made lawful by legislative sanction, annoyances in connection therewith must be borne by the individual subject to this qualification that the act must be done without negligence or unnecessary disturbance, by the one doing it, of the rights of others. So, it has been declared that 'when the legislature directs or allows that to be done which would otherwise be a nuisance, it will be valid, upon the ground that the legisla-

ture is ordinarily the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law.' And where legislative authority is granted for the construction of a work of public utility, upon making compensation, the one constructing it is liable only for such injury as results from the want of due skill and care in exercising the power conferred." The author cites many cases in support of the text which, upon examination, we find entirely satisfactory.

With this question disposed of we will next consider whether the complaint otherwise states a cause of action against the defendants or either of them. We will first consider whether it states a cause of action against the defendant Bigelow.

The gravamen of the complaint is that the defendants negligently failed to provide and maintain embankments or other means of protecting people, who might use the Kalia fishery for swimming and fishing purposes, from falling into the channel that had been excavated in said fishery. Does the law place any such duty on the superintendent of public works, which office Bigelow held when the contract was executed and which he has ever since held? Section 798, R. L. 1925, provides that "the superintendent of public works shall be, and is, charged with the superintendence and management of the internal improvements of the Territory." Bigelow's connection with the Waikiki drainage canal (which, as we have just observed, is a public improvement authorized by legislative enactment) was not in an individual capacity but in his capacity as a public official. There is nothing in the statute above quoted defining the duties of the superintendent of public works or in the statutes relating to the construction of the Waikiki drainage canal that specifically imposes the duty on the

superintendent of public works, when a public improvement such as the Waikiki drainage canal is constructed, to erect embankments or barriers or to use other means to protect people from falling into an excavation that is a part of or incidental to such improvement. In the absence of such requirement, whether embankments or barriers should be so erected or other means for the protection of the public should be maintained is a matter of judgment or discretion. If this duty were specifically imposed by statute, thus making it mandatory and absolute and therefore ministerial, a different question might arise. Under what circumstances a duty is ministerial in its nature has often been the subject of judicial decision. In Mechem on Public Officers, section 657, the following definition of ministerial duties is given: "The most important criterion, perhaps, is that the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion."

In *Grider* v. *Tally*, 77 Ala. 422, the court said at page 425: "The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion."

In *Way* v. *Gulick*, 5 Haw. 70, the plaintiff sued the defendant for damages arising out of the destruction by fire of certain buildings. The gravamen of the action was the neglect of the minister of the interior to provide a supply of water in the water pipes of the waterworks of the city of Honolulu, in the vicinity of the fire, when it occurred. A demurrer to the complaint on the ground that it stated no cause of action was sustained. The

court, in discussing the subject, said at pages 71, 72: "The only statutes which refer to the matter are sections 191 and 192 of the Civil Code, which are as follows: 'The minister of the interior shall have the general charge of the pipes or conduits of water to supply the town and harbor of Honolulu. He may, from time to time, regulate the rates of supply to ships, and to parties on shore, and establish such rules as may be needful for the public interests.' Sec. 192: 'The said minister shall appoint some discreet and capable person to be superintendent of water works, whose duty it shall be to keep the conduits or pipes for the conveyance of water in repair, collect all water rates from ships and persons in Honolulu or its vicinity, and perform such other duties in connection therewith as the said minister may prescribe.' These sections establish beyond controversy, I think, that the withholding or supplying of water for public or private uses, rests in the discretion of the minister of the interior, and for the exercise of that discretion, whether rightly or wrongly exercised, he is not, nor is the government, responsible." And again, at page 73, the court said: "In all instances where recoveries have been had for neglect or malfeasance of a public officer, the duties cast upon him have been ministerial; that is, 'absolute, certain, and imperative;' no such duties devolved upon the defendant in this case, and so he is not liable, and the demurrer must be sustained."

In *Templeton* v. *Beard,* 159 N. C. 63, the plaintiff sued the commissioners of Rowan County. It appeared from the complaint that one of the public roads of the county was bisected by a stream; that this stream rendered the road at that point dangerous and unsafe, which fact was known to the defendants; that in attempting to cross the stream plaintiff's horse, which she was

then driving, was drowned; that sometime prior to the accident the county commissioners had let a contract for the construction of a bridge over the stream but had negligently failed to have said bridge erected. She claimed damages in the sum of $300. A demurrer to the complaint was sustained on the ground that it stated no cause of action. In discussing the subject the court said at page 65: "On these facts alleged in the complaint and made the basis of plaintiff's demand, the county of Rowan is not liable, on the principle declared and approved in the well-considered case of *White* v. *Commissioners*, 90 N. C., 437, and many others of like purport. Nor will the action lie against the members of the board as individuals, because there is no averment that defendants acted or failed to act 'corruptly or of malice.' The case presented is one involving the exercise of discretionary powers conferred upon the board for the public benefit, and it is very generally recognized in such case that in the absence of statutory provision even ministerial officers, acting on questions arising properly within their jurisdiction, are not liable to suit by individuals without an averment of that kind. In such cases the officers are sometimes termed '*quasi*-judicial,' and the general principle applicable is stated by Mechem on Public Officers as follows: 'The same reasons of private interest and public policy which operate to render the judicial officer exempt from civil liability for his judicial acts within his jurisdiction apply to the *quasi*-judicial officer as well, and it is well settled that the *quasi*-judicial officer cannot be called upon to respond in damages to the private individual for the honest exercise of his judgment within his jurisdiction, however erroneous or misguided his judgment may be. The name applied to the office or the officer is immaterial. The question depends in each case upon the character of the act. If

it be judicial or *quasi*-judicial in its nature, the officer acts judicially and is exempt. Neither is it material that the officer usually or often acts ministerially. In those cases in which he does act judicially he is, nevertheless, exempt. A statement approved in numerous decisions here and elsewhere. *Hudson* v. *McArthur,* 152 N. C., 107; *Raysford* v. *Phelps,* 43 Mich., 342; *Baker* v. *State,* 27 Ind., 485; 28 Cyc. 466.'"

Our conclusion is that the original complaint states no cause of action against the defendant Bigelow.

The question still remains, however, whether a cause of action is stated against the other defendant, the Hawaiian Dredging Company. Again we must refer to the complaint. It is therein alleged that the dredging company in 1921, acting under the contract between itself and the defendant Bigelow, dug, excavated and dredged in the fishery of Kalia the channel in which the plaintiff's son fell and was drowned. Then follows the following allegation: "That the defendants well knew, and from such use of the fishery as aforesaid, and the conditions thereof, ought to have known that the digging, excavating and dredging of the said portion of the said canal, in the said fishery would render and make it dangerous to the lives of the said people and citizens, and although well knowing and foreseeing such danger, proceeded with the digging of the said portion of the said canal, *and after having dug the same,* and *then* still knowing, or still ought to be knowing that the said portion of the said canal had rendered the said fishery dangerous as aforesaid, let the said portion of the said canal, *dug* to the dimensions aforesaid to remain hidden and invisible to the present time, in the water of the said fishery without providing any embankments or other means of protecting the lives of said people and citizens."

It is true, the complaint also alleges that the contract

is still in force and the dredging company is still carrying on operations thereunder. The only inference that can reasonably be drawn from these two allegations is that, while the excavation in the Kalia fishery was completed in 1921, there still remained, unfinished, other portions of the canal upon which the dredging company was still carrying on operations. It nowhere appears from the complaint, however, that these unfinished portions had any connection with the death of the plaintiff's son. The negligence relied on, therefore, is the failure of the defendants to maintain suitable and efficacious means to prevent people, including children, from falling into the channel *that had been excavated* in the Kalia fishery.

Was there any legal duty on the dredging company to provide and maintain such means after the channel in the fishery had been completed? The answer to this question lies in the contract under which the dredging company undertook to construct the Waikiki drainage canal. The plaintiff attaches a true and complete copy of this contract to his complaint and makes it a part thereof. Section 3 of the contract, under the heading "General description of work to be performed," provides: "A main drainage canal is to be constructed beginning at Ala Moana Road and continuing up to and intercepting Apuakehau stream, otherwise designated as the outrigger stream. This canal to be 60 feet in width at the top and 9 feet in depth below M. L. L. W. with the side slopes 1 to 1." The contract also provides for the procuring and transporting by the dredging company of filling material that was required by the contract. In section 5, under the heading "Material for filling," it is provided in subsection 1 as follows: "Material for filling may be earth, clay, sand, loam, coral, cinders, gravel, or broken stone and free from trees, refuse vegetable or other gigantic matter. If broken stone is used for filling,

it shall only be used up to one foot of finished grade and the balance of fill made of earth, loam or other material approved by the engineer. Where stone is used for filling, sufficient finer material shall be used to completely fill all voids. Part of the filling material if deemed advisable, may be obtained from the ocean in localities as approved by the superintendent of public works and board of harbor commissioners." It is also provided in subsection 4 of section 15 that "When it is desirable or deemed necessary to obtain dredging materials from the ocean, the location shall be accurately defined giving all data as to size of area where dredging operations will be carried on and approximate depths and before dredging operations are started, permission must first be obtained from the board of harbor commissioners and the United States engineers. The riparian rights of all abutting property owners shall be respected and protected, and the contractor will be responsible for all damages of whatever nature to property owners caused by any dredging operations."

It is obvious from these sections that while the excavation that was made in the Kalia fishery was incidental to the construction of the Waikiki drainage canal it was not an integral part of the canal. No specifications for the dimensions of such excavation are prescribed nor is its locality fixed by the contract nor is its acceptance by the superintendent of public works required by the contract. The excavation was made in pursuance of that clause of the contract which authorized the dredging company, under certain conditions, to obtain filling material from the ocean. As we have already observed, it appears from the original complaint that the excavation complained of was completed some three years before the plaintiff's son was drowned. The purpose, therefore, for which it was made had been accomplished and so

far as appears to the contrary from the complaint the dredging company had nothing further, thereafter, to do with it. As appears from the contract, the right of the dredging company to occupy a part of the ocean for the purpose of obtaining filling material could only be exercised by the permission of the board of harbor commissioners and the United States engineers. When the purpose of such occupancy was accomplished the right of occupancy ceased. Thereafter the dredging company not only was under no duty to erect barriers or provide other means of preventing people from falling into the excavation but it was entirely without authority to do so. Such an attempt would have been an unwarranted interference with the jurisdiction of the board of harbor commissioners over the waters of the ocean in that locality. This jurisdiction is conferred upon the board of harbor commissioners by section 106 of the Organic Act, which provides that "the board of harbor commissioners of the Territory of Hawaii shall have and exercise all the powers and shall perform all the duties which may lawfully be exercised by or under the Territory of Hawaii relative to the control and management of the shores, shore waters, navigable streams, harbors, harbor and water-front improvements, ports, docks, wharves, quays, bulkheads and landings belonging to or controlled by the Territory."

For the foregoing reasons it is our conclusion that the original complaint states no cause of action against the defendant the Hawaiian Dredging Company.

The remaining question to be determined is whether the circuit judge erred in refusing to permit plaintiff to file the amended complaint which he offered. This amended complaint was offered on the 19th day of November, 1926. The objection made by both defendants to the filing of the amended complaint was that inasmuch

as the original complaint stated no cause of action against them the cause of action attempted to be set up in the amended complaint was barred by the statute of limitations of two years.

The theory of the original complaint is that the channel in which the plaintiff's son was drowned was dug in pursuance of a contract entered into between the Hawaiian Dredging Company and Lyman H. Bigelow, superintendent of public works, acting for the Territory, for the construction of the Waikiki drainage canal (a public improvement authorized by legislative enactment) and that the channel was a part of or incidental to said canal. The amended complaint is a complete departure from this theory. Given its most liberal construction in favor of the plaintiff it is on the theory that the dredging company and Bigelow, without legislative authority and as mere trespassers, conspired to dig and did dig and are continuing to dig the channel in question without taking any precautions to protect people from falling into it and being drowned. One theory is that the channel was dug under circumstances that did not make it a public nuisance and the other theory is that it was dug under circumstances that might make it a public nuisance. One theory is that the channel was dug under a contract between the Territory and the dredging company and by statutory authority. The other theory is that the defendants acted and are still acting without any authority whatever. The two theories are not only different but contradictory. Evidence that would sustain one would disprove the other. The amended complaint, therefore, if it states any claim recognizable by law, states one so at variance with the one attempted to be stated in the original complaint as to be an entirely new cause of action.

It is the almost universal rule that when an amended

complaint states a new and different cause of action from that undertaken to be stated in the original complaint and is not offered until the cause of action therein alleged is barred by the statute of limitations it should on objection be disallowed. This question is firmly settled by the United States Supreme Court in *Union Pacific Railway* v. *Wyler,* 158 U. S. 285, 296. In that case the court said: "The principle is, that, as the running of the statute is interrupted, by the suit and summons, so far as the cause of action then propounded is concerned, it interrupts as to all matters subsequently alleged, by way of amendment, which are part thereof. But where the cause of action relied upon, in an amendment, is different from that originally asserted, the reason of the rule ceases to exist, and hence the rule itself no longer applies." In *Kansas City* v. *Hart,* 60 Kans. 684, 691, 57 Pac. 938, 940, the court, speaking on this subject, said: "It is true, as a general rule, that amended pleadings relate back to the commencement of the action, but this rule never obtains where a separate and distinct cause of action is set up by way of amendment. Even though the amendment might otherwise be allowable, it is generally held that it will not be permitted when the effect will be to make the state of facts pleaded relate back so as to avoid the statute of limitations if the new cause of action would be otherwise barred."

The statute under which the defendants claim that the cause of action attempted to be set up in the amended complaint is barred is as follows: "Damage to persons or property. Actions for the recovery of compensation for damages or injury to persons or property must be instituted within two years after the cause of action accrued, and not after." (Sec. 2645, R. L. 1925.)

The word "damages" as used in the statute evidently means "damage" or harm. When the legislature first

enacted this law in 1907 the word "damage" and not "damages" was used. (See S. L. 1907, p. 195.) The limitation fixed by the original statute was one year. Later, in 1913, this statute was amended by extending the limitation to two years, as it now is. In this amended statute the word "damages" was used instead of "damage." We are convinced that this change was accidental and not intentional. The word "damages," as it now appears in the statute, has the same meaning as "compensation," as that word appears in the statute. Unless the change from "damage" to "damages" was unintentional the legislature committed the solecism of saying "actions for the recovery of compensation for compensation or injury," etc. On the other hand, if the word "damages" is construed to mean "damage" this solecism disappears.

Taking this view of the statute we will now consider whether it is applicable to the instant case. It is obvious that the legislative intent was to fix a bar to all actions that might arise out of bodily damage or injury to persons whether the action is brought by the injured person himself or by some one else who was legally aggrieved by such injury. For instance, if Manuel Brown had not been drowned by falling into the channel at Kalia but only hurt, it is clear that if he desired to sue for compensation for his injury he would have been obliged under the statute to bring his suit within two years after his cause of action accrued. It is also clear that Manuel's father, the plaintiff in the instant case, if under such circumstances he wished to recover compensation for the loss of Manuel's services and companionship, which loss resulted from Manuel's injuries, would be obliged to bring his suit within the time fixed by the statute. In construing the statute the extent and character of the injury sustained by Manuel would have

no effect. The plaintiff contends that because the injury resulted fatally to Manuel the statute is inapplicable. We take a contrary view. The suit is to recover compensation for loss or damage resulting to the plaintiff from an injury to his son that proved fatal. It is compensation for bodily injury that determines the kind of actions that must under the statute be brought within two years. The statute makes no distinction between slight or serious injuries or between those which prove fatal to the person receiving them and those which he survives. The extent and result of the injury would undoubtedly be material in determining the amount of compensation the plaintiff was entitled to but would be wholly immaterial in determining whether the action was barred by the statute. We think section 2645 is applicable to the cause of action attempted to be stated in the amended complaint and it was therefore not error to refuse to allow it to be filed.

If the amendment had been offered before the bar of the statute had fallen a different question would be presented.

The exceptions are overruled.

*N. W. Aluli* and *E. K. Aiu* for plaintiff.

*W. B. Lymer,* Attorney General, and *C. B. Dwight,* Deputy Attorney General, for L. H. Bigelow.

*Prosser, Anderson & Marx* and *C. Rodgers* for Hawaiian Dredging Company.