HATSUMI YOSHIZAKI *v.* HILO HOSPITAL,
BY ITS MANAGING COMMITTEE.

No. 4511.

May 1, 1967.

Richardson, C.J., Cassidy, Wirtz,
Lewis and Mizuha, JJ.

OPINION OF THE COURT BY LEWIS, J.

## I.

At the outset we are confronted with a jurisdictional question. Defendant-appellee asserts that the appeal was taken prematurely. Notice of appeal was filed May 28, 1965, at which time the court had merely rendered its decision that summary judgment would be entered in accordance with defendant's motion. This decision, filed April 30, 1965, was entitled "Order on Defendant's Motion for Summary Judgment," and concluded with the statement: "Motion for summary judgment is hereby granted." Plaintiff mistakenly interpreted this to be a judgment. She appealed from "the Order on Defendant's Motion for Summary Judgment and Summary Judgment for the Defendant * * * entered herein on April 30, 1965." Subsequently, on June 30, 1965, judgment was entered. The record does not contain notice of entry of judgment pursuant to H.R.C.P., Rule 77 (d), but plaintiff's counsel soon learned of the judgment. He promptly served and filed an amended designation of the record, referring to the appeal as "taken by Notice of appeal filed on the 28th day of May, 1965." A majority of the court, consisting of the Chief Justice and Justices Lewis and Mizuha, is of the opinion that this amended designation served to give life to, and in effect refile, the notice of appeal of May 28, 1965 to which it referred; that the designation of the correct date of the judgment in the notice of appeal was not crucial;[1] and that under the principles laid down in *In the Matter of Dean Trust*, 47 Haw. 304, 387 P.2d 218, the appeal is before us. While the two remaining justices do not agree, they deem themselves bound by the majority ruling in this matter and join in Part II of the opinion on the merits.

## II.

Summary judgment was entered for defendant on the ground that plaintiff's action was barred by R.L.H. 1955, § 241-7, the two-year statute of limitations applicable to personal injury

---

[1] *Porter* v. *Borden's Dairy Delivery Co.*, 156 F.2d 798 (9th Cir.) ; *Wilson* v. *Southern Ry.*, 147 F.2d 165 (5th Cir.) ; *Shannon* v. *Retail Clerks, Int'l Protective Ass'n*, 128 F.2d 553 (7th Cir.) ; see also *Foman* v. *Davis*, 371 U.S. 178.

actions. Plaintiff's appeal brings before the court the question when the statute of limitations begins to run in a malpractice suit, and the further question as to the applicability of R.L.H. 1955, § 241-1, the six-year statute relating to actions *ex contractu.*

The complaint was filed September 17, 1963. Pursuant to H.R.C.P., Rule 3, this constituted the commencement of the action. The complaint was in four counts, three sounding in tort and one in contract.

As her first claim, plaintiff alleged that defendant hospital, through its employee and pathologist, one Dr. Dickelmann, under-took to and did furnish pathological services between June 27, 1959 and July 5, 1959, consisting in examination and diagnosis of an ailment in plaintiff's neck area, for which purpose she entered the hospital; that Dr. Dickelmann, in examining and making laboratory tests of plaintiff's neck tissues, negligently diagnosed the neck tissues as cancerous when in fact they were not; that by reason thereof plaintiff underwent injurious radiation treatment at Queen's Hospital, which was unnecessary; that the radiation treatment caused permanent damage to her neck and throat area; and that plaintiff has been compelled to undergo tracheotomy and further surgery as a result of the radiation treatment and the damage that it caused. By answers to requests for admissions it was brought out that the X-ray treatment was administered during the period July 27, 1959 to August 21, 1959.

Under the two-year statute of limitations (§ 241-7), in order to escape the bar of the statute the cause of action must have accrued no earlier than September 17, 1961. Plaintiff alleged in her complaint that she "had no knowledge of the negligent actions of Dr. Lorin E. Dickelmann, as alleged herein, until after September 19, 1961." However, plaintiff argued in her brief that "the period of limitations does not start to run until the date of discovery of the wrongful act *or the date when by the exercise of reasonable diligence that act should have been discovered.*" (Emphasis added.) At the oral argument, plaintiff's counsel conceded that, under the line of cases which he seeks to have this court follow,[2] the circumstances that led to discovery of the

---

[2] See note 10, *infra.*

wrongful act should have been alleged, that it would be a question of fact as to when discovery should have been made, and that the complaint would have to be amended in order to come under the rationale of the cases cited by plaintiff. Thus plaintiff's position is that the statute of limitations did not start running until she knew or should have known that Dr. Dickelmann was negligent.

Were we able to agree that the running of the statute of limitations is deferred until discovery of or reasonable opportunity to discover the cause of action, our task would be easier. However, we do not deem it within our prerogative to graft such a provision onto the statute. Where the legislature has intended to provide for discovery of the cause of action it has so stated, as in R.L.H. 1955, § 241-19, discussed *infra*. Whether this state should have a special malpractice statute providing for discovery of the cause of action, and if so whether there nevertheless should be an overall limit on the time allowed for suit, are matters for the legislature to decide. Only the legislature can give the matter the complete treatment on policy grounds which it merits.

In the present case it is evident that there were four different things occurring or which may have occurred at different times, *i.e.*, the incorrect and negligent diagnosis; the X-ray treatment; the suffering of damage from the treatment; and the discovery of the fault in the diagnosis. We hold that the statute of limitations commenced running at the time of the suffering of damage from the treatment, and was not deferred until the discovery of the fault in the diagnosis.

At what point did damage from the X-ray treatment manifest itself? Defendant requested an admission that plaintiff, on December 12, 1960, wrote to the doctor who had administered the X-ray treatment, stating that she had been advised that she had received more radiation than she could take. Plaintiff admitted writing to this doctor but stated that she could not admit or deny the matter set forth in the request. However, from the pleadings and the facts that do appear we take it that plaintiff knew before September 17, 1961 that she had been burned by the radiation

treatment, even though she did not yet know that the treatment from which she thus suffered was unnecessary. It is to be noted that the complaint alleges merely that plaintiff "had no knowl-, edge of the negligent actions of Dr. Lorin E. Dickelmann until after September 19, 1961." It does not allege that plaintiff was without knowledge that damage had been done by the radiation. However, plaintiff under the terms of the remand should not be foreclosed from amending in the court below should she be in a position to allege facts and circumstances presenting a genuine and material issue of fact as to when damage from the radiation first manifested itself, for the consideration of the court. The significance of this issue of fact is that, in our opinion, the statute of limitations does not commence running on a cause of action in tort for medical malpractice prior to the time when the patient has suffered deleterious effects.[3] Cf., Hahn v. Claybrook, 130 Md. 179, 100 Atl. 83, 86; Vaughn v. Langmack, 236 Or. 542, 564, 390 P.2d 142, 152 (dissenting opinion of Sloan, J.). We proceed to further examination of this point.

The applicable statute, R.L.H. 1955, § 241-7, as amended (Supp. 1965), provides that actions for the recovery of compensation for damage or injury to person or property "shall be instituted within two years after the cause of action accrued, and not after," with certain exceptions incorporated by a reference to section 241-12, which relates to persons under disability and is inapplicable here. The statute does not begin to run until the cause of action accrues,[4] and there is no cause of action for negligence without damages.[5] However, the commencement of the running of the statute of limitations is not dependent upon the development of the full damages.[6]

---

[3]There is authority to the contrary, e.g., Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 188 N.E.2d 142. See Annot., 74 A.L.R. 1317, 1318; 144 A.L.R. 209, 210; 80 A.L.R.2d 368, 377.

[4]Schimmelfennig v. Grove Farm Co., 41 Haw. 124, 130.

[5]22 Am. Jur. 2d, Damages, § 8. United States v. Reid, 251 F.2d 691 (5th Cir.) discussed infra, is illustrative. The rule applicable to breach of contract actions is distinguishable. See Ferreira v. Honolulu Star-Bulletin, 44 Haw. 567, 577, 356 P.2d 651, 657; 22 Am. Jur. 2d, Damages, § 9.

[6]City of Miami v. Brooks, 70 So. 2d 306, 308 (Fla.); 34 Am. Jur., Limitation of Actions, § 160. Cf., Silva v. Wheeler & Williams, Ltd., 32 Haw. 920; Scott v. Pilipo, 23 Haw. 349, 355.

As to when there is damage, we find the rule of *Urie* v. *Thompson*, 337 U.S. 163 (1949) [7] applicable in this class of cases.[8] *Urie* was a workmen's compensation case which expressed a rule that had been followed in Hawaii in *Silva* v. *Wheeler & Williams, Ltd., supra*, 32 Haw. 920, 926 (1933), and now is incorporated in our Workmen's Compensation Statute as revised by S.L. 1963, c. 116, R.L.H. 1955, § 97-91 (Supp. 1965). The rule of *Urie* v. *Thompson* was applied in a medical malpractice case in *United States* v. *Reid, supra*, 251 F.2d 691, 694-95 (5th Cir.), in which the court said:

> "* * * These [long accepted concepts of statutes of limitation] relate to the fundamental nature of a 'cause of action' or a 'claim' asserted as a legal obligation. Ordinarily there is a coincidence of negligent act and the fact of some damage. Where that occurs the cause of action comes into being and the applicable statute of limitations begins to run even though the ultimate damage is unknown or unpredictable. But it is not the wrongful, *i.e.*, negligent act, which gives rise to the claim. For there must be damage caused by it. Until there is *some* damage, there is no claim and certainly a statute prescribing the time in which suit must be filed (whether as a condition of right or remedy) can never operate prior to the time

---

[7] See Annot., 11 A.L.R.2d 277.

[8] To be distinguished are cases where the negligent act is in itself a legal injury, such as the ordinary automobile collision case. We assume that the X-ray treatment was not necessarily injurious. Hence the present case is a different type of case. As stated in *Hahn* v. *Claybrook, supra*, 130 Md. 179, 100 Atl. 83, 85:

> "There are cases involving a class of actions for consequential damages, which hold that where the breach of duty or other wrongful act may or may not be legally injurious to the plaintiff, until he has suffered some consequence therefrom, the statute of limitations does not begin to run against the injured person's right of action until some injury or damage has occurred, or the person has suffered some injurious consequence therefrom. In 19 A. & E. E. of Law (2d Ed.) 200, after stating the general rule, it is said:
>
> > "'Where * * * the cause of action is based on consequential as distinguished from direct damages, and involves an act or omission which might have proved harmless, the cause of action must be taken as accruing only upon the actual occurrence of damage, so that the statute runs only from that time.'"

See 34 Am. Jur., *Limitation of Actions*, § 115; 54 C.J.S., *Limitations of Actions*, § 168.

a suit would be permitted. 34 Am. Jur. Limitation of Action, §§ 160, 161; 11 A.L.R.2d 279; 74 A.L.R. 1317, 1319; 144 A.L.R. 209, 210.

\* \* \* \* \*

"The claim was not for initial tuberculosis. It was that faulty medical advice interfered with proper tests and treatment. Obviously the acceleration of an existing condition into one of an aggravated state was 'the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves.' Urie v. Thompson, supra, 337 U.S. 163, 69 S.Ct. 1025, 93 L.Ed. at page 1293."

While *Reid*, like *Urie*, was a case of a slow-developing disease of the lungs, the *Urie* principle was applied in an X-ray treatment case in *City of Miami* v. *Brooks, supra*, 70 So. 2d 306, 308-9 (Fla.). Plaintiff in that case experienced no ill effects from the radiation until five years later, and took prompt action thereafter. The action was held timely.[9] So, in the present case we hold that the statute of limitations did not run prior to the time when the deleterious effects of the treatment became manifest.

Many of the medical malpractice cases are actions for negligently leaving a sponge or other foreign substance in the body of the plaintiff at the time of an operation. We are not confronted with the question—which may be encountered in such cases—as to whether the cause of action accrues and the statute of limitations starts running when the patient experiences pain or other deleterious effects, or only when his symptoms are or should have been hooked up with the operation. The present case is entirely different. Plaintiff knew that her condition was induced by the radiation treatment. She knew that the treatment was the result of Dr. Dickelmann's diagnosis. She did not know that the diagnosis was actionable. Plaintiff's case depends entirely on

[9]*Cf., Buck* v. *Mouradian*, 100 So. 2d 70 (Fla. App.) ; *Ogg* v. *Robb*, 181 Iowa 145, 162 N.W. 217. Insofar as these cases disregard the allegedly false and fraudulent statements made by defendant the holding thereof is or may be inapplicable in this jurisdiction under R.L.H. 1955, § 241-19.

her contention that the running of the statute was deferred until the still later point when she discovered or should have discovered that the diagnosis was actionable. We are unable to defer the running of the statute of limitations to that point.

It is important to note that according to plaintiff's own allegations the defendant's services were concluded by July 5, 1959. There is nothing to suggest that plaintiff continued to rely on defendant for services thereafter. No question of continuing negligence is involved. This opinion should not be understood as disapproving the deferring of the running of the statute of limitations for the period in which a plaintiff has remained in a defendant's care. In some of the cases cited herein this factor was ignored; our citation of such cases does not signify approval of that feature of those cases.

The California rule, which plaintiff seeks to have this court follow, originated in *Huysman* v. *Kirsch,* 6 Cal. 2d 302, 57 P.2d 908, and has been given a liberal application by the California courts.[10] See *Costa* v. *Regents of University of California,* 116 Cal. App. 2d 445, 254 P.2d 85. The California rule has been followed in some states and rejected in others. Annot., 80 A.L.R. 2d 368, § 7. In our view this rule does not justify the deferring of the running of the statute of limitations until the time of discovery of the incorrect diagnosis which caused plaintiff to submit to the treatment of which she complains. The point is brought out by a California case, *Ehlen* v. *Burrows,* 51 Cal. App. 2d 141, 124 P.2d 82. The court analyzed the complaint as setting forth four causes of action, of which it will be sufficient to notice the second and fourth. The second cause of action consisted in the claim that defendant had removed plaintiff's teeth when it was entirely unnecessary to do so, by reason of a wrong diagnosis. The fourth cause of action was for leaving pieces of roots in the jaw and gums at the time of removal of the teeth, to her damage.

---

[10]However, the California cases require specificity in pleading of the facts and circumstances justifying deferral of the running of the statute of limitations. See for example *Hurlimann* v. *Bank of America Nat'l Trust & Sav. Ass'n,* 141 Cal. App. 2d 801, 297 P.2d 682, 684, *Wohlgemuth* v. *Meyer,* 139 Cal. App. 2d 326, 293 P.2d 816, 819; *Myers* v. *Stevenson,* 125 Cal. App. 2d 399, 270 P.2d 885, 887.

The court held as to the second cause of action that the statute began to run when plaintiff ceased to be a patient of defendant. As to the fourth cause of action, the court held there was no difference in principle between leaving in the patient's body pieces of broken roots and leaving unremoved a sponge or drainage tube, and that as to this cause of action plaintiff should have an opportunity to amend, the question being whether plaintiff discovered, or by the use of reasonable diligence should have discovered, the presence of the broken roots at such date as to bar this cause of action as well. It is significant that this discovery rule was not applied to the second cause of action which, like the present one, was founded on the proposition that the injurious treatment need not have been suffered but for defendant's incorrect diagnosis.

In *Seaboard Air Line R.R.* v. *Ford,* 92 So. 2d 160, 164 (Fla.), the court on rehearing reversed its original opinion, which had applied the discovery rule. In the original opinion the court had reasoned that since the basis of liability under the Federal Employers' Liability Act (45 U.S.C.A. 51-60) was negligence, the statute of limitations did not commence running at the point when the disease had manifested itself and plaintiff knew or should have known that the disease was occupational in origin, but only when plaintiff had "notice that there had been an invasion of his legal right * * *," the court stating that "until the exact deleterious substance causing the disease, and the circumstances surrounding the supplying and use of same, are known to plaintiff, he cannot know whether he has a cause of action against the defendant on account of its negligence in the matter * * *." (92 So. 2d at 162.) On rehearing the court held that "the statute of limitations begins to run from the time that the employee knows or should have known that the disease was occupational in origin * * *." If this modified rule were applied here it would not help the plaintiff, as she knew that the radiation treatment which burned her was the result of Dr. Dickelmann's diagnosis, even though she did not know that the diagnosis gave rise to a cause of action.

In *Owens* v. *White*, 342 F.2d 817 (9th Cir.), plaintiff alleged that defendants had negligently diagnosed a lump in plaintiff's breast as cancerous and had removed the breast following which, about three years after plaintiff was released from defendants' care, she discovered that the lump was benign. The question was whether the action was barred by the Idaho two-year statute. While the case was pending on appeal Idaho, in *Billings* v. *Sisters of Mercy*, 86 Idaho 485, 389 P.2d 224, adopted the California rule in a sponge case, that is, a case based on the leaving of a sponge in plaintiff's body at the time an operation was performed by defendant. The court of appeals in *Owens* deemed this discovery rule equally applicable in the case before it. We do not agree. An erroneous diagnosis case is different from a sponge case. Plaintiff in *Owens* knew for three years or more that she had suffered the loss of a breast by reason of defendants' diagnosis. She did not know that the diagnosis was erroneous and negligent, in other words she did not know that it was actionable. But the statutory period is given in which to determine this as well as for the preparation and filing of the complaint. In the absence of a special statute governing the point there is and can be no guarantee that the statutory period will suffice, any more than in other cases. For example, in *Rubino* v. *Utah Canning Co.*, 123 Cal. App. 2d 18, 266 P.2d 163, 168, it was held that the action was barred one year after plaintiffs became violently ill, allegedly from unfit food, the court disallowing plaintiffs' contention that "the statute started to run not from the date of injury but from the date of discovery of the cause of injury."

It is important to note that in *Owens* the court evidenced its concern over the application of the discovery doctrine by adopting the equitable doctrine of laches, the court saying: "* * * the discovery doctrine is itself subject to some restraint as the time from the occurrence of the malpractice grows greater. In such circumstances, the considerations of fairness to the defendant underlying statutes of limitation become more insistent, while the plaintiff's appeals to equity implicit in the discovery doctrine become less so. We believe the Idaho courts would apply a concept akin to the equitable doctrine of laches to limit the discovery

rule, a rule which itself has its genesis in equity. Thus, the suit of a plaintiff who is reasonably diligent may be barred if the defendant shows undue prejudice because of an extreme lapse of time between the commission of the wrongful act and the commencement of suit. To so conclude strikes us as a reasonable accommodation between the competing considerations noted in *Billings* [86 Idaho 485, 389 P.2d 224] of giving full scope to the statute of limitations on the one hand and according a reasonable measure of justice to the plaintiff on the other."

This approach we find unacceptable. By the terms of the statute the two-year period commences running when the cause of action accrues. But under the reasoning of *Owens* the cause of action accrues on the date when the court by hindsight finds it equitable for the statute to have commenced running. There is no leeway in the statute for such construction. Only the legislature can provide a solution.[11]

Indictment of the discovery doctrine as a judge-made rule is supplied by California's treatment of malpractice actions against attorneys. In such cases the California courts do not defer the running of the statute of limitations until discovery of defendant's negligence. Thus in *Griffith* v. *Zavlaris*, 215 Cal. App. 2d 826, 30 Cal. Rptr. 517, 520, the court applied the statute of limitations to bar a plaintiff who accepted an unenforceable note by reason of defendant having misadvised him; and denied plaintiff's contention that the statute only commenced to run when judgment went against him in a suit brought on the note and he discovered defendant's negligence. The court refused to apply *Huysman* v. *Kirsch, supra,* 6 Cal. 2d 302, 57 P.2d 908, the progenitor of the California rule in medical malpractice cases, and exhibited concern over the unlimited possibilities of the discovery doctrine, saying:

> "Plaintiff urges that the rule of medical malpractice cases be applied to legal malpractice cases, citing Huysman v. Kirsch (1936) 6 Cal.2d 302, 57 P.2d 908, holding in spite of earlier cases which held that the statute of limitations ran from the

---

[11]See Lillich, *The Malpractice Statute of Limitations in New York and Other Jurisdictions,* 47 Cornell L.Q. 339, 366-371.

date of the physician's act, that the statute does not begin to run until the discovery by the patient of the negligence of the physician. However, medical malpractice is governed by section 340, subdivision 3, Code of Civil Procedure (one year) while legal malpractice is governed by section 339, subdivision 1 (two years). The Legislature has in no way made these two malpractice actions analogous. Although the application of the rule of legal malpractice actions may seem harsh, nevertheless *it would appear that if the time-honored rule as to the commencement of the limitation provided in section 339, subdivision 1, is to be changed, it should be changed by the Legislature with appropriate conditions, so that the liability of an attorney would not exist indefinitely.*" (30 Cal. Rptr. at 520, emphasis added.)

*Accord, Bustamante* v. *Haet,* 222 Cal. App. 2d 413, 35 Cal. Rptr. 176, 177; *Shelly* v. *Hansen,* 244 Cal. App. 2d 210, 53 Cal. Rptr. 20.

In *Alter* v. *Michael,* 64 Cal. 2d 480, 413 P.2d 153, the Supreme Court of California recognized in respect of legal malpractice that the adoption of the discovery doctrine falls within the legislative prerogative. Considering a district court of appeals decision (48 Cal. Rptr. 14) which had held that legal malpractice was governed by the same code section applicable to medical practice, the supreme court vacated the decision, adhered to the rule of *Griffith* v. *Zavlaris, supra,* and then took stock of the situation as follows:

"Arguments that discrimination results in favor of doctors and against lawyers should be addressed to the Legislature and not to the courts. We note, however, the rule that the one-year period applicable to a medical malpractice action does not commence to run until the patient discovers his injury or through the use of reasonable diligence should have discovered it [citing cases], whereas the two-year period which governs a legal malpractice action runs from the time of the negligent acts. (Bustamante v. Haet (1963) supra, 222 Cal. App. 2d 413, 414-415, 35 Cal. Rptr. 176, and cases there cited.)

In this respect the rules could be viewed as discriminating in favor of lawyers. (See Griffith v. Zavlaris (1963) supra, 215 Cal. App. 2d 826, 830-831, 30 Cal. Rptr. 517, commenting that any seeming harshness in this respect as between medical and legal malpractice actions is for the Legislature to change, not the courts.) That *the Legislature is aware of the differing rules as to when limitations statutes commence to run* is demonstrated by the 1961 amendment which added subdivision 3 to section 339 (to cover actions based upon rescission of oral contract) and expressly declared that under certain circumstances the time begins to run from 'the date upon which the facts * * * occurred,' and under other circumstances it 'does not begin to run until the discovery * * * of the facts * * *.' " (413 P.2d at 155-56, emphasis added.)

We deem it important to adopt a rule that we can live with without making arbitrary distinctions such as are exhibited upon comparison of the California legal malpractice cases with the medical malpractice cases. This we can do by recognizing from the start that the legislature is the body which decides when the discovery doctrine applies. In one situation only has the legislature caused the running of our statute of limitations to turn on plaintiff's discovery of the cause of action. That is in case of defendant's fraudulent concealment of the cause of action. R.L.H. 1955 § 241-19; *cf., Yokochi* v. *Yoshimoto,* 44 Haw. 297, 301, 353 P.2d 820, 823. But fraudulent concealment cannot be predicated merely on an erroneous and negligent diagnosis, without actual knowledge of the wrong on the part of defendant.[12] Reckless disregard of the truth or falsity of what is represented may be tantamount to knowledge of falsity,[13] but we cannot agree that mere failure of a defendant to discover the truth, albeit due to negligence, is the badge of fraud.[14] Plaintiff in fact does not al-

---

[12]*Cf., Bodne* v. *Austin,* 156 Tenn. 366, 2 S.W.2d 104, 105; Annot., 80 A.L.R. 2d 368, 407.

[13]*Wilcox* v. *Ellis,* 5 Haw. 335, 347; *Anderson* v. *Knox,* 297 F.2d 702, 721, 727 (9th Cir.).

[14]Cases such as *Crosset Health Center* v. *Croswell,* 221 Ark. 874, 256 S.W.2d 548, insofar as they rest on fraudulent concealment of the cause of action, in our opinion are not well reasoned.

lege fraud, but seeks to apply in a negligence action the discovery rule laid down in fraud cases.

We come now to the consideration of the remaining counts. What has been said disposes of all the tort counts. However, for her second cause of action plaintiff alleged that: "Defendant warranted to Plaintiff, as a member of the general public, that the pathological services of defendant hospital was performed by a pathologist with ordinary skill and judgment and was therefore safe for patients of said defendant hospital to rely upon the same; that said pathological report was mistaken and incorrect * * *." This was in lieu of the allegations, made in count one, that Dr. Dickelmann "negligently, carelessly and incorrectly diagnosed Plaintiff's said neck tissues as being cancerous when in fact they were not," and that Dr. Dickelmann, in his examination and tests, "did not use the care and skill ordinarily used by pathologists engaged in such practice in the County of Hawaii[15] and the State of Hawaii." But as will appear, the allegations in count two had the same meaning as those in count one.

By its request for admissions defendant brought out that the warranty alleged in the second count was not an express warranty but one which plaintiff alleged arose from the relationship of the parties. Plaintiff's interpretation is that the "Second Cause of Action alleges, in essence, the emergence of a contractual duty of providing safe pathological services on the part of the hospital due to the contractual interaction between Appellant and Appellee." By "safe" plaintiff means, according to her allegations, that the services were to be performed, "with ordinary skill and judgment." Plaintiff concedes that "breach of the contractual duty is traced to the same wrongful act," and that "both rights, in tort and in contract, issue from the same negligent act * * *."

The question is whether plaintiff can escape the bar of the two-year statute and attain the benefit of the six-year statute by suing *ex contractu.* The six-year statute, R.L.H. 1955, § 241-1, was enacted first, and originally applied to the present type of action, whether sounding in tort or in contract. However, the statute

---

[15]The defendant hospital is located in the County of Hawaii.

enacted by S.L. 1907, c. 113, as amended by S.L. 1913, c. 19, and S.L. 1957, c. 138, presently R.L.H. 1955, § 241-7 (Supp. 1965), now provides:

> "§ 241-7. Damages to persons or property. Actions for the recovery of compensation for damages or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after * * *."

Shortly after this statute was enacted this court, in *Kauha* v. *Palolo Land & Improvement Co.*, 20 Haw. 237, 239, held that it operated to take out of the six-year statute, which at that time still contained a paragraph relating to "actions for trespass upon lands," an action for physical injuries to land. Plaintiff in that case contended that the new enactment "does not apply to an action of trespass *quare clausum fregit*, which is primarily a possessory action, the gist of which is the disturbance of the possession, and that whatever is done after the breaking and entering is but an aggravation of damages." The court denied this contention, saying:

> "* * * Whatever force, if any, this argument might have in a case involving the sole question of a disturbance of the possession, we need not say at this time. In the case at bar in addition to such damage as may be implied by the mere breaking and entering of the close, the declaration shows an actual and physical injury to the property itself, and plaintiffs emphasize this phase of the case by the facts set forth in the declaration, as well as by claiming substantial damages in the sum of $1500. The main object of the action is to recover compensation for the physical injury to the land."

This case is squarely in point. The form of the action is inconsequential. The substance controls. So, in *Brown* v. *Bigelow*, 30 Haw. 132, 145-47, the court held the two-year statute applicable to a common law action[16] brought by a father on account of the death of his minor son. After pointing out that the word

---

[16]See *Rohlfing* v. *Moses Akiona, Ltd.*, 45 Haw. 373, 376, 369 P.2d 96, 98.

"damages," introduced in the statute at the time of the 1913 amendment, was a clerical error, and that "damage" was meant, as in the original statute, the court held:

"\* \* \* It is obvious that the legislative intent was to fix a bar to all actions that might arise out of bodily damage or injury to persons \* \* \*.

\* \* \* \* \*

The plaintiff contends that because the injury resulted fatally to Manuel the statute is inapplicable. We take a contrary view. The suit is to recover compensation for loss or damage resulting to the plaintiff from an injury to his son that proved fatal. It is compensation for bodily injury that determines the kind of actions that must under the statute be brought within two years." (pp. 146-47.)

The question of what statute of limitations is applicable to a malpractice action is reviewed in an annotation, 80 A.L.R. 2d 320. In note 10, page 329, and at pages 337-339, there are cited cases taking the view that a statute limiting the time for bringing an action for injuries to the person is applicable to malpractice actions irrespective of the form of the action. This is the correct interpretation of our statute under the rule of *Kauha* v. *Palolo Land & Improvement Co., supra,* 20 Haw. 237. As stated in *Bland* v. *Smith,* 197 Tenn. 683, 277 S.W.2d 377, 379, following *Bodne* v. *Austin,* 156 Tenn. 353, 2 S.W.2d 100:

"The question of whether or not the action is one ex contractu or ex delicto is not determinative of the question. The question is whether or not the plaintiff is suing for injuries to the person."

*Accord, Patterson* v. *Vincent,* 44 Del. 442, 61 A.2d 416, 418 (Super. Ct.); *Weinstein* v. *Blanchard,* 109 N.J.L. 332, 162 A. 601, 603 (overruled on another point by *Fernandi* v. *Strully,* 35 N.J. 434, 173 A.2d 277, 286); *Nightlinger* v. *Johnson,* 18 Pa. D. & C. 47; *Griffin* v. *Woodhead,* 30 R.I. 204, 74 A. 417; *Klingbeit* v. *Saucerman,* 165 Wis. 60, 160 N.W. 1051.

Plaintiff's claim is to recover general damages for the injury done her, and special damages for the expenses incurred by rea-

son of the injury. The latter is barred as well as the former. *Weinstein* v. *Blanchard, supra,* 109 N.J.L. 332, 162 A. 601, 604. The two-year statute applies to all damages that flow from the personal injury. So far as appears, only the cost of the allegedly faulty diagnosis and the cost of the ensuing X-ray treatments can be said to be damages based on the contract count, not dependent upon the fact of a personal injury, and coming within the provisions of the six-year statute, section 241-1.

We are aware that under the New York rule distinctions may be made based on the kind of damages asked. Annot., 80 A.L.R. 2d 320, 343. But with the minor exceptions above indicated, we find no room in our statute, as interpreted in *Kauha,* for the application of such a rule in the present case. Cases may arise in which other distinctions may appropriately be made.

For reasons already stated, plaintiff, upon remand, shall not be foreclosed from amending should she (1) be in a position to allege facts and circumstances presenting a genuine and material issue of fact as to when damage from the radiation first manifested itself, for the consideration of the court; or (2) desire to pursue her claim for damages based on the contract count, not dependent upon the fact of a personal injury and coming within the provisions of the six-year statute, R.L.H. 1955, § 241-1, such as the cost of the allegedly faulty diagnosis and the cost of the ensuing X-ray treatments. The judgment is set aside in order to permit such amendments to be made within twenty days after remand of the case or such further time as may be allowed by the court below. In the absence of any amendment permitted by this opinion, judgment shall be reentered for defendant.

Remanded for proceedings consistent with this opinion.

*George S. Yuda (Ushijima and Nakamoto* of counsel) for plaintiff-appellant.

*Alexander C. Marrack (Thomas M. Waddoups* with him on the brief, *Robertson, Castle & Anthony* of counsel) for defendant-appellee.

**18**

I disagree from the majority holding that the cause of action accrued in this case "from the time when burning by the radiation manifested itself * * * ."

The burns were a result of the prescribed treatment but we are not now concerned with any issue as to the propriety of that treatment. The complaint is that the burns were incurred as the result of unnecessary treatment, unnecessary because in fact the tissues were not malignant. The burns which the plaintiff received may serve as notice of the negligent administering of X rays, and may have provided a cause of action against Queen's Hospital. But appellant's complaint basically is that the statute of limitations should not start running against her right to sue until she discovered, or in the reasonable exercise of diligence should have discovered the alleged negligence of Dr. Dickelmann in erroneously diagnosing the benign tissues in her throat as malignant.

The majority opinion purports to apply the rule of *Urie* v. *Thompson*, 337 U.S. 163, as applied in *United States* v. *Reid*, 251 F.2d 692, and *City of Miami* v. *Brooks*, 70 So. 2d 306, 308. A reading of those cases and the cases which have subsequently applied the principle there outlined, indicates that the majority opinion in this case has unnecessarily restricted the rule. The language used and the facts involved in those cases show that in each case the court required not only knowledge of an injury incurred but also that knowledge of the injury was such that it provided knowledge of a right to a cause of action. Plaintiff in this case by the exercise of reasonable diligence could not have discovered the negligent diagnosis of benign tissues from the fact of the X-ray burns alone.

In *Seaboard Air Line R. R.* v. *Ford*, 92 So. 2d 160, at 165, on rehearing, it was held in an action under the Federal Employers' Liability Act for injuries from dermatitis caused by the use of chromate that under the rule adopted in *Urie* v. *Thompson, supra*, and *City of Miami* v. *Brooks, supra*, "the statute of limitation begins to run from the time that the employee knows or

should have known that the disease was occupational in origin, even though diagnosis of the exact cause has not yet been made; * * *."

It is impossible for me to agree with the reasoning of the majority opinion based upon the rule followed in *Urie* v. *Thompson, supra, City of Miami* v. *Brooks, supra,* and *Seaboard Air Line R. R.* v. *Ford, supra,* in holding in this case that the statute commenced running because plaintiff "knew that the radiation treatment which burned her was the result of Dr. Dickelmann's diagnosis, even though she did not know that the diagnosis gave rise to a cause of action."

In *Seaboard Air Line R. R.* v. *Ford, supra* at 164, the court carefully stated upon rehearing "that when the existence of a disease of the kind here involved (contact dermatitis) is manifested and its nature as an occupational disease is fairly discoverable, the statute begins to run, even though the exact substance causing the disease has not been determined." Can we say in this case that when the plaintiff first noticed that she was burned by the X-ray treatment, that Dr. Dickelmann's alleged negligent diagnosis was "fairly discoverable"? There is no relationship between radiation burns and the alleged negligent diagnosis of normal tissues. In the *Seaboard Air Line R. R.* v. *Ford, supra* at 165, the court had reference to a disease which, when it manifests itself, is such that "the employee has been 'injured' so as to start the running of the statute, Urie v. Thompson, supra; and if the employee knows or should know that his disease is occupational in origin, he 'has been put on notice of his right to a cause of action', City of Miami v. Brooks, supra, and can no longer rely on 'blameless ignorance' as tolling the running of the statute." In this case the plaintiff had been injured by radiation burns, but she did not know at that time that the diagnosis which led to X-ray treatment was negligent.

It was clearly stated in *City of Miami* v. *Brooks, supra* at 309, "the statute attaches when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. In the instant case, at the time of the x-ray treatment there was nothing to indicate any injury or

to put the plaintiff on notice of such, or that there had been an invasion of her legal rights. It is the testimony of one of the expert witnesses that injury from treatment of this kind may develop anywhere within one to ten years after the treatment, so that the statute must be held to attach when the plaintiff was first put upon notice or had reason to believe that her right of action had accrued. To hold otherwise, under circumstances of this kind, would indeed be a harsh rule and prevent relief to an injured party who was without notice during the statutory period of any negligent act that might cause injury."

I would adopt the rule followed by Fifth Circuit Court of Appeals in *Quinton* v. *United States*, 304 F.2d 234, wherein it states that a claim for malpractice accrues when the claimant discovered, or in the exercise of reasonable diligence should have discovered the acts constituting the alleged malpractice. The claim arose out of transfusions administered to plaintiff's wife by government employees on May 17, 1956. The three transfusions received were of RH Positive blood although the plaintiff's wife had RH Negative blood. The plaintiff alleged that as a result of the incorrect transfusions his wife gave birth to a stillborn child on December 17, 1959, and that she could not safely bear other children. It appeared that the appellant and his wife did not learn of and, in the reasonable care, could not have learned of this error until June 1959, during the wife's pregnancy. Complaint was filed on August 29, 1960.

The court held that the claim was not barred by the two-year statute of limitations. As authority for its decision that the cause of action accrued when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice, the court cited only one case as authority, *Urie* v. *Thompson, supra*. The narrow interpretation given this case by the majority opinion in concluding that the statute begins to run when the burn manifested itself is in direct contrast to the broad and reasonable interpretation given it by *Quinton* v. *United States, supra*.

Furthermore, the majority opinion disagrees with *Owens* v. *White*, 342 F.2d 817, which is a case in point. The plaintiff sued

for malpractice, claiming that the defendant doctor negligently diagnosed a lump in her left breast as a cancerous tumor when in fact it was benign. Pursuant to that diagnosis, the defendant doctor recommended surgery and the breast was unnecessarily removed. The issue was raised of when the cause of action accrued. The defendant argued that the cause of action accrued when the malpractice was committed or at the latest when the treatment was terminated, the latter being after the surgery. The plaintiff urged the same rule advocated by the appellant here, that is, that the statute commences to run when the plaintiff knows or in the exercise of due diligence should know of the injury and its cause. The court held that the statute did not bar the action adopting the due diligence standard. Under the rule which is adopted in this case before us, the plaintiff in *Owens* v. *White, supra,* would have been charged with notice of the doctor's erroneous diagnosis of malignant tissues as soon as her breast was removed.

The argument that the more liberal rule would raise the danger of stale claims based on obscure past actions of the physician is not persuasive. As was pointed out in *Daniels* v. *Berryllium Corporation,* 227 F. Supp. 591, and *Owens* v. *White, supra,* that argument cuts both ways for the burden of proof of negligence is still on the plaintiff. I can see no sound reason for permitting the defendant to escape liability here simply because the alleged negligent diagnosis of benign tissues was such as to remain undiscovered for more than two years.