474 P.2d 480

**Eunice M. CAVE, Administratrix of the Estate of Oscar Turner Cave, Deceased, Plaintiff-Appellant,**

**v.**

**Jess CAVE and Olean Cave, his wife, Defendants-Appellees.**

**No. 8962.**

Supreme Court of New Mexico.

Sept. 14, 1970.

Paul R. Dillard, Farmington, for appellant.

Jennings & Copple, Roswell, for appellees.

## OPINION

McKENNA, Justice.

This action was commenced on March 14, 1966, by the administratrix of the estate of Oscar Turner Cave to obtain an accounting of the decedent's interest in a claimed partnership known as the Cave Brothers. She asks that the decedent's one-half interest in the partnership assets be recognized and protected by declaring a trust and a partnership lien thereon. The administratrix appeals from the judgment against her.

The appellant claims that the partnership was an oral one between her deceased husband and his brother Jess Cave, which commenced on or before 1932 and continued to Oscar Cave's death on December 23, 1965. She says that defendant Jess Cave was the managing partner and that he and his co-defendant wife, Olean Cave, concealed the material facts and, either through fraud or mistake, in violation of a fiduciary duty, appropriated unfairly some of the assets to themselves. The defendants denied that Cave Brothers was ever a partnership; but, if one existed, they say it was dissolved and terminated in 1947 by oral agreement and distribution, with final consummation of the dissolution in 1956. They also defended by alleging that Oscar Cave never expressed any dissatisfaction, or made demand or asserted any claim contrary to settlement agreement, and that the claims now presented are barred by laches as well as the four-year and ten-year statutes of limitation.

The trial court faced unusual difficulties in deciding the issues. Aside from the problems accompanied by the claims of an oral partnership and an oral dissolution, sparse records and the considerable span of time, Oscar Cave is dead and Jess Cave is totally mentally incompetent. His defense was conducted by a guardian ad litem.

 At the outset, we must state the rules which govern our review of the court's findings. If supported by substantial evidence, we will not question them. Any disputed fact is to be resolved in favor of the defendants and the evidence is to be viewed in the aspect most favorable to the successful parties. The trial court is to determine credibility and weight. All reasonable inferences are to be indulged in to support the findings made; evidence and inferences to the contrary are disregarded. Jones v. Anderson, 81 N.M. 423, 467 P.2d 995 (1970); Fox v. Doak, 78 N.M. 743, 745, 438 P.2d 153 (1968); Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 89, 428 P.2d 625 (1967). In Tapia, at 89, 428 P.2d at 628, we defined substantial evidence as

" * * * such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Wilson v. Employment Sec. Comm'n, 74 N.M. 3, 389 P. 2d 855, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn."

We mention first our customary test and our rules because the following résumé of those facts we deem pertinent for our decision are drawn from findings made by the court. We are particularly cognizant of the importance of the factual events in a case such as this and we recite them only after examining the record and after concluding that there is substantial evidence to support the pertinent findings.

In 1924 or 1925 Jess Cave came to Artesia, New Mexico. He bought four lots, built a building and went into the filling station and garage business. His brother Oscar Cave arrived in 1927, moved in with Jess and his wife, and started working in the business. Later, a grocery store and a wholesale gasoline business were added. There is no evidence that Oscar contribut-

ed any money to the acquisition of the properties. Jess had exceptional business acumen, with a capacity for hard work and management. He was the manager of the business. The brothers were tight-lipped. Neither trusted banks, nor even their wives, where money or business was concerned. Business records were meager and inconclusive. The evidence disclosed that Olean Cave, the co-defendant, kept what records there were.

Between 1929 and 1947, the enterprise expanded to four tracts of farmlands at Hagerman, New Mexico. Title was taken in various ways: one tract was in Jess' name; one under Jess Cave and Oscar Cave, and two under Jess, Oscar and Nannie Cave, their mother. United States Treasury Bonds were also acquired under the names of Jess Cave or Oscar Cave. The record also reveals that there were two bank accounts under the name of Cave Bros.

In 1938, Oscar moved to the Hagerman farm to live with his mother on one of the tracts and until 1947 looked after the farming operations. In 1947, he decided to retire and expressed a desire to be relieved of all duties on the farm. In August, 1947, he and Jess entered into an agreement of settlement.

By this agreement, which was not in writing, Oscar conveyed by deeds all his interest in the Artesia properties to Jess, and Jess conveyed to Oscar one-half interest in the entire Hagerman farm, comprised of the four tracts which we have mentioned. Additionally, Jess agreed to pay all bills, taxes, assessments and other expenses in connection with the farm, and to take care of all tax returns under partnership returns for the Cave Brothers. He agreed to pay all income taxes for the entire operation so long as the farm was retained. Jess fully performed his agreement. Oscar received all the fruits of his one-half interest in the farming properties.

After his retirement in 1947, Oscar was never again gainfully employed; he did not participate in the work or the revenue of the Artesia properties; he did not assist in the operation of the farm, but he did share in the rental income from it. In 1948 he married the plaintiff.

In 1956, the Hagerman farming properties were sold and Oscar participated to his one-half interest. Thereafter, Jess did not pay the total income taxes. Each brother, after 1956, reported and paid his own tax on his distributions from the sale. No partnership returns were filed after 1956. In 1956, Oscar and his wife moved off the farm to Truth or Consequences, New Mexico, where he lived until his death on December 23, 1965.

There is no evidence that Oscar ever complained in any manner against the 1947 settlement. The defendants never concealed any material fact as to the claimed partnership assets. Although Jess was the manager, the brothers were close and Oscar knew their affairs or had the means available to acquire such knowledge. Since 1947, Jess expended time and labor in improving, operating and managing the various properties.

For reversal, the appellant argues that the court erred in law and fact in finding and determining: (1) that there was no partnership and that the assets were not partnership assets; (2) that the business arrangement was dissolved in 1947 and finally terminated in 1956; (3) that certain bonds registered under the names of Oscar Cave or Jess Cave became the sole property of Jess upon Oscar's death; (4) that the claims are barred by laches and limitations, and urges (5) that there was not substantial evidence to support the findings and conclusions. It is the appellant's position that the partnership continued until Oscar's death in 1965. She does not claim any wrong was visited upon Oscar as to the Hagerman farm per se.

As we decide this case, we do not need to determine whether or not the business relationship between the brothers was a partnership; for it is our opinion that whatever it was, it came to an agreed end in 1947 with final and full termination and winding-up in 1956 when the Hagerman farm was sold with each brother receiving

his one-half share of the sale. We will assume, however, for the purpose of our rationale, that a partnership did exist between the brothers.

■ Our Uniform Partnership Act, § 66-1-29, N.M.S.A.1953, defines dissolution as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on * * * of the business." Absent any violation of the partnership agreement, dissolution is caused by "the express will of any partner when no definite term or particular understanding is specified * * *." § 66-1-31(1) (b), N.M.S.A.1953. We have no reason to believe that our assumed oral partnership agreement prevented a termination by the express will of Oscar. In any event, partners may by mutual consent dissolve such relationship. Such intent may be evidenced by their acts in the absence of formal articles of dissolution. Fisher v. Fisher, 83 Cal.App.2d 357, 188 P.2d 802, 804 (1948); Brand v. Erisman, 84 U.S.App.D.C. 194, 172 F.2d 28, 29 (1948); 40 Am.Jur., Partnership, § 235. In 1947, Oscar executed three deeds to Jess, conveying his interest in the Artesia properties in exchange for a one-half interest in the Hagerman farm and Jess' promises which we have enumerated. After his retirement in 1947, Oscar was never gainfully employed. He did not thereafter participate in the work or the profits of the Artesia businesses.

Furthermore, Jess' wife, Olean, testified that in 1947 the partnership was dissolved. A nephew testified that Oscar told him that "he and Jess had all their business all fixed up, all prepared and settled, whatever there was." A niece told of a breakfast conversation between her uncles:

"Q Now, at this breakfast conversation, would you mind running that by one more time, so I can, perhaps, understand it better?

"A Well, the breakfast conversation wasn't the first thing [time] they had discussed it. I had heard him say he wanted to retire. So, he did retire. He had told Jess that he

would deed him the property in Artesia for half of the farm and he was to pay the bills and the taxes on the farm."

The plaintiff verified that Oscar was retired when she married him in 1948. Perhaps a small matter, but inconsistent with her position that the partnership continued until Oscar's death in 1965, is her testimony that Oscar purchased some livestock, ran them on the Hagerman farm and then sold them in 1954 as his property. She further testified that the livestock did not belong to the Cave Brothers, but to Oscar alone, and that Jess did not share in the money from the sales.

■■ Quite clearly, substantial evidence supported the finding that the relationship between the brothers was terminated in 1947. However, this crucial question follows: Did Jess, the manager of the business, overreach and take advantage of his brother in the settlement agreement of 1947? Again, we assume arguendo that they were partners and therefore Jess, the managing partner, owed a fiduciary's duty to his brother, particularly exacting because he was the manager.

3 Pomeroy's Equity Jurisprudence, § 956 (5th Ed. 1941) says, at 790:

"While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumptions."

We agree with. that statement. In Rogers v. Stacy, 63 N.M. 317, 319, 318 P.2d 1116 (1957), we found that there was "an underlying duty imposed by law upon all partners because of their confidential relationship to be completely honest, open, and fair" especially in a dissolution where one partner

has superior knowledge by virtue of being the managing partner. Non-performance of that duty, we determined, was constructive fraud. The appellant is correct when she argues that it is incumbent upon a partner with the superior knowledge to establish that what was done was fair and equitable, with complete candor.

Despite what we have said of Jess' superior knowledge of the affairs of the business, from this we cannot and do not infer that Oscar had no knowledge of the pertiment business matters. Nor can we say that Jess concealed, or that Oscar was powerless to seek and gain the necessary knowledge. It is quite to the contrary, as found by the court. Oscar knew of the Artesia properties; he was well aware of the Hagerman farm operation. The plaintiff testified that Oscar and Jess were "very close." Oscar had every opportunity for a period of eighteen years to complain, ask, search or sue on the distribution, or any other facet of the dissolution with which he was dissatisfied. The avenues of inquiry and knowledge were open. He did nothing—despite the frequent importunings of his wife. "One must be diligent and make such inquiry and investigation as the circumstances reasonably suggest and the means of knowledge are equivalent to actual knowledge." Winn v. Shugart, 112 F.2d 617, 622 (10th Cir. 1940).

Pomeroy, supra, at 860, § 964, also says that:

"Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he *may* lose such remedial right by a subsequent confirmation, by *acquiescence, and even by mere delay or laches.* \* \* \*" (Latter emphasis ours.)

The duty to proceed arises "when the fraud is known, or ought to have been known." Pomeroy, supra, § 917, at 599. Parenthetically, we observed that knowledge or imputed knowledge combined with delay is at least evidence of acquiescence.

See Humboldt Livestock Auction, Inc. v. B & H Cattle Co., 261 Iowa 419, 155 N.W. 2d 478, 487 (1967).

It is not solely that unreasonable delay or laches frustrates or renders impotent the doing of equity; these defenses spring positively from equity itself which is much concerned also about working a disadvantage or a prejudice to the other party. It is true that laches is not favored absent inexcusable neglect. Pratt v. Parker, 57 N.M. 103, 111, 255 P.2d 311 (1953). But the trial court found that neglect and we have no trouble in agreeing. Furthermore, Jess is now totally incompetent and Oscar is dead. We have little in the way of records. Courts think such factors, when combined with an exorbitant lapse of time, are particularly influential when asked to piece together a dead relationship and fashion relief. Silver v. Korr, 392 Pa. 26, 139 A.2d 552, 555 (1958); Younis v. Griego, 72 Ariz. 369, 236 P.2d 358 (1951); see Hendricks v. Hendricks, 55 N.M. 51, 67, 226 P.2d 464 (1950), commenting on the statute of limitations; 40 Am.Jur., Partnership, §§ 333, 334.

In Morris v. Ross, 58 N.M. 379, 381, 271 P.2d 823, 824 (1954), we approved a listing of the elements that must be shown to establish laches:

"(1) Conduct on the part of the defendant, \* \* \* giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, \* \* \*;

"(2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;

"(3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and

"(4) injury or prejudice to the defendant in the event relief is accorded

to the complainant or the suit is not held to be barred."

The plaintiff complains of the defendants and we will assume that the first element is present. The second and third elements are present. As to the fourth element, substantial evidence supports the conclusion that Jess Cave believed all matters between him and his brother were agreed to in 1947. Thereafter, he invested time and labor and money in improvements to the properties that were deeded to him. If we grant relief, injury to the defendants is certain.

■ We also point out that the appellant supports her basic theory of an inequitable distribution by comparing Oscar's estate as of 1965 with that of Jess as of 1965. In Watson v. Lunt, 75 N.M. 734, 736, 410 P.2d 954 (1966), we specifically held that an accounting must be based on the market value of the assets at the time of dissolution. We do not decide here whose burden it was to establish the 1947 market values of the various properties. The plaintiff tried, but the offered testimony was inadmissible. We mention the Watson rule only to show further that another difficulty attributable to time and delay obscures and makes uncertain the path of equity. See Consolidated Placers v. Grant, 48 N.M. 340, 349, 350, 151 P.2d 48 (1944).

We conclude that the plaintiff's claim was barred by laches.

■ The appellant specifically complains of the various Treasury Bonds that were taken under the names of Jess Cave or Oscar Cave. Even if the brothers were partners, they could purchase property from partnership assets to be held in joint tenancy. We have no trouble in concluding that these bonds were held in joint tenancy with the right of survivorship and became the sole property of the survivor. The survivor could have been Oscar instead of Jess. We note that two of these bonds were redeemed prior to Oscar's death and he received his one-half. See Annotation at 37 A.L.R.2d 1221.

■ The conclusions of law reached by the trial court and on which we rely were properly drawn from the pertinent findings. Finally, the appellant draws our attention to § 20–2–5, N.M.S.A.1953 (1969 Supp.), sometimes referred to as the Dead Man's Statute:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, a claimant, interested or opposite party shall not obtain a judgment or decision on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is supported by some other material evidence tending to corroborate the claimant or interested person."

See a discussion of this statute in Peck v. Wright, 70 N.M. 259, 372 P.2d 831 (1962). It is evident from what we have narrated that the requirement of the statute has been met.

It is not necessary and we do not rule on the applicability of the four-year statute of limitations, § 23–1–4, N.M.S.A. 1953, or the ten-year statute of limitations, § 23–1–21, N.M.S.A.1953.

We want it understood that while we engaged in certain assumptions for the purpose of discussion and argument, they were for those purposes only, and we do not in any manner mean to imply that Jess Cave perpetrated any fraud, actual or constructive, against his brother.

The judgment is affirmed. It is so ordered.

TACKETT and SISK, JJ., concur.