563 P.2d 1162

**John Dee READ, Plaintiff-Appellant,**

v.

**WESTERN FARM BUREAU MUTUAL INSURANCE COMPANY and Dwight M. Mazzone, individually and as agent for Western Farm Bureau Mutual Insurance Company, Defendants-Appellees.**

**No. 2785.**

Court of Appeals of New Mexico.

April 12, 1977.

Phil Krehbiel, Toulouse, Krehbiel & De-Layo, P.A., Albuquerque, for plaintiff-appellant.

Frank H. Allen, Jr., Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for defendant-appellee Western Farm Bureau Mut. Ins. Co.

## OPINION

SUTIN, Judge.

Plaintiff sought reformation of a general farm liability insurance policy issued by Western Farm Bureau Mutual Insurance Company (Western Farm) to include therein family medical insurance coverage. In addition, plaintiff sought damages based on negligence, breach of contract and fraudulent misrepresentation. Summary judgment was granted Western Farm and plaintiff appeals. We reverse.

A. *On the claim for reformation, a genuine issue of material fact exists.*

Plaintiff contends, on his claim for reformation of the Western Farm insurance poli-

cy, that the doctrine of reasonable expectation applies as stated in *Pribble v. Aetna Life Insurance Company*, 84 N.M. 211, 501 P.2d 255 (1972). Western Farm contends that plaintiff had no reasonable expectation because a check of the face sheet would alert any layman that he did not have medical coverage. It is Western Farm's position that the policy in question, particularly the face sheet, is clear, plain and without ambiguity; and, therefore, plaintiff is chargeable with knowledge of its terms.

The question for decision is:

Is there a genuine issue of material fact on whether the insurance policy issued by Western Farm was clear, plain and without ambiguity?

On April 24, 1974, Dwight M. Mazzone (Mazzone), a sales agent for Western Farm, discussed various insurance coverages with plaintiff. Plaintiff asked for a liability insurance policy that included family medical coverage, and specifically told Mazzone that plaintiff wanted coverage that would pay medical expenses for accidental injury to himself and members of his family.

Mazzone assured plaintiff that the policy purchased would contain family medical coverage without limitation as to the amounts of benefits payable thereunder. Plaintiff relied on Mazzone, purchased the insurance and paid the premium.

Plaintiff received the insurance policy by mail. Plaintiff examined the policy and noted paragraph III of section one, which was "COVERAGE D—MEDICAL PAYMENTS (Premises and Employees)". This paragraph provided for medical payments "to or for each person who sustains bodily injury caused by accident; while such person is: 1. on the insured premises with your permission". Plaintiff believed that this described the type of insurance requested, and plaintiff assumed that the policy had been issued in accordance with Mazzone's assurance.

Paragraph IV of section one was "COVERAGE E—Medical Payments (Named Insured and Family)". From the affidavit and depositions of plaintiff and his wife, we

have no knowledge whether plaintiff read this paragraph.

On the face sheet of the policy, plaintiff noticed the word "NIL" typed several times under all coverages specified, except "General Farm Liability." The premium for this coverage was $37.20. Under "5. FAMILY MEDICAL PAYMENTS—E. LIMITS E—PREM." appeared the word "NIL".

Plaintiff was 19 years of age with a high school education. He swore that he could not find a definition of "NIL" in the policy. He had no idea what it meant and no one had explained it to him.

After plaintiff suffered an accidental injury, Western Farm denied liability.

The word "nil" is a contraction of "nihil", and "nihil" means "nothing".

We have discovered only two cases that discuss the use of the word "nil" in an insurance policy. *Treadwell v. Pacific Indemnity Company*, 154 C.A.2d 853, 317 P.2d 123 (1957); *Alamo Cas. Co. v. Richardson*, 235 S.W.2d 726 (Tex.Civ.App.1950).

In *Treadwell*, the insured argued that the typewritten word "nil" should apply to limits of liability, rather than to coverage. The Court said:

> In more technical approach, the word "nil," a contraction of nihil, means "nothing" (Webster's New International Dictionary, 2d ed.). To state that "The liability of this Company shall not exceed nothing" is by no means to say that the liability is unlimited. *We are aware that it is hardly realistic to apply standards of good English usage to the language of an insurance policy. Policy jargon is at least as painful to the purist as the language of judicial opinions. Nonetheless, we are convinced that the word "nil" in its context here cannot be given the meaning urged by appellant.* [Emphasis added.] [317 P.2d at 124]

In *Alamo Cas. Co.*, cited in *Treadwell*, the Court held that the word "nil" as used in a clause of the policy which read " $ Nil On automobiles being driven over road to point of destination selected by the insured as the place of storage of such automobiles",

would be construed to mean that the policy did not insure against such loss, and not as meaning that no limitation as to amount was imposed on liability for such loss. The Court said:

(A) The test of the constructions proposed by the parties is the intention expressed in the policy, and the only evidence of this intention now before us is the language of the policy. *The parties did not pray for equitable relief, and they did not attempt to prove that language in the policy had a meaning different from the meaning which would ordinarily be attributed to it.* [Emphasis added.] [235 S.W.2d at 729]

We gather from the above cases that in an equitable action, if the insured attempts to prove that the word "nil" is of doubtful meaning, an ambiguity may exist in the insurance policy.

 In the instant case, the claim for reformation of the insurance policy was an equitable proceeding. *Buck v. Mountain States Investment Corporation*, 76 N.M. 261, 414 P.2d 491 (1966).

The question that presents itself is whether the use by Western Farm of "NIL", the meaning of which plaintiff did not understand, renders the policy vague and ambiguous.

"Language is ambiguous when its meaning is doubtful or when it has a double meaning." *Foundation Reserve Insurance Co. v. McCarthy*, 77 N.M. 118, 120, 419 P.2d 963 (1966). In an insurance policy, language used is a means of communication, and a word used in an insurance policy is often a "bone of contention". This is a metaphor taken from two dogs fighting for a bone. Decade after decade, with regularity, the insured and the insurer fight for a bone, which includes the meaning of a word, a phrase or a provision of the insurance policy.

 In each case where a "bone of contention" exists over a word in an insurance policy, that word has different meanings to the insured and insurer, because " 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' " Quoted in *Jernigan v. New Amsterdam Casualty Company*, 69 N.M. 336, 343, 367 P.2d 519, 524 (1961); *Harp v. Gourley*, 68 N.M. 162, 171–72, 359 P.2d 942 (1961). In each case, we take the word or phrase and construe it liberally to protect the insured. *Mountain St. M. C. Co. v. Northeastern N. M. Fair Ass'n*, 84 N.M. 779, 508 P.2d 588 (1973) (practicing); *King v. Travelers Insurance Company*, 84 N.M. 550, 505 P.2d 1226 (1973) (accidental); *Foundation Reserve Insurance Co.*, supra (struck; by); *Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N. Y.*, 80 N.M. 224, 453 P.2d 587 (1969) (all only while contained in or attached to such buildings or structures); *Fowler v. First National Life Insurance Co. of America*, 71 N.M. 364, 378 P.2d 605 (1963) (driving or riding).

The reason is that the insurer prepares the policy. Its sales agent, generally, is schooled in the art of salesmanship. The insured most often is a layman, the average man or woman on the street, who is not a college graduate or a student of insurance law. These insureds are persons who do not seek legal advice to determine whether insurance coverage has been afforded when the coverage and the premium paid are modest. They cannot, ordinarily, read and understand the complex, complicated and intricate provisions of an insurance policy in words of fine print that ambles along the way. They rely on the representations of the sales agent.

 These facts are also the reasons why a word, a phrase, or a provision in a contract of insurance is not what the insurer intended the language to mean, but what a reasonable person in the position of the insured would have understood them to mean, and any ambiguity will be construed liberally in favor of the insured. *Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N. Y.*, supra. The trial court below and this Court understand the meaning of the odd contracted Latin word "NIL" as used in the policy, and we know that coverage of medi-

cal payments, limited to premises and employees, does not cover medical payments for the named insured and family, but we must not impose this knowledge on the public. When we say that a word will be given its ordinary meaning, we do not include "odd" words, peculiar words, contracted words, Latin words, or words that are not a part of speech or writing. We mean words ordinarily used in the common speech of men and women. Black's Law Dictionary 1195 (Rev. 4th ed. 1968) defines NIHIL:

> Lat. Nothing. Often contracted to "nil." The word standing alone is the name of an abbreviated form of return to a writ made by a sheriff or constable, the fuller form of which would be "nihil est" or "nihil habet," according to circumstances.

We must recognize the admonition of Justice Moise sixteen years ago when he said that ". . . the better rule is to not require of an insured something we know as a practical matter is not ordinarily done, namely, that he read and understand the terms of his policy. . . . To hold otherwise puts every insured at the mercy of the company in its fine print, and sets an unrealistic standard of conduct. I venture the opinion that before long the court will be faced with trying to distinguish later arising cases on their facts . . . ." *Porter v. Butte Farmers Mutual Insurance Company*, 68 N.M. 175, 186, 360 P.2d 372, 379 (1961) (Justice Moise, dissenting).

A later case, *Pribble*, supra, said:

> We will not simply mechanically charge Mr. Pribble with the duty of reading and understanding the policy and certificate and then bar him from recovery by a literal application of its terms and provisions. Rather, based on the facts before us, *we hold that Mr. Pribble, himself . . . was only bound to make such examination of such documents as would be reasonable for him to do under the circumstances; that he will only be held to that which he would be thereby alerted; and if the language is such that a laymen [sic] would not understand its full impact were he to attempt to plow through it, the documents will yield the maximum protection consistent with their language and the reasonable expectation of Mr. Pribble.* [Emphasis added.] [84 N.M. at 216, 501 P.2d at 260]

From an examination of the policy, plaintiff mistakenly believed that he was covered for medical expenses incurred in an accidental injury due to the representations of Mazzone. The word "NIL" did not communicate to plaintiff that medical expense coverage was omitted. A word that an insured cannot understand is a word of doubtful meaning and ambiguous, and if an insured accepts the policy under these facts and circumstances, a genuine issue of material fact exists whether the insured's conduct was that of a reasonable person, such as an ordinary lay person.

From the admonition given in earlier years, from the liberal construction given to words and phrases in insurance contracts for the benefit of the insured, and from the relaxation of the rule that an insured must read, know and understand the contents of a policy before he accepts it, we have adopted a realistic doctrine. An insurance company has a duty to make policy provisions and words therein, especially those related to coverage, plain, clear and prominent to laymen. Otherwise, if the language is such that a layman would not understand its full impact, the insurance contract will be interpreted to yield the maximum protection consistent with its language and the reasonable expectation of the insured. Furthermore, on summary judgment, we must view the matters presented in the most favorable aspect they will bear in support of the right to trial on the issues. *Jacobson v. State Farm Mutual Automobile Ins. Co.*, 81 N.M. 600, 471 P.2d 170 (1970).

By following the precepts that govern this case, we cannot say as a matter of law that the word "NIL" is plain, clear and unambiguous to plaintiff. It is a question of fact so that a genuine issue of material fact exists in the claim for reformation of the policy.

**B.** *On the claim for damages, a genuine issue of material fact exists.*

On the issue of damages, plaintiff's position on appeal is that a genuine issue of material fact exists whether Mazzone had authority to make representations that would be binding upon Western Farm. In *Pribble, supra,* it was held that actual or apparent authority was usually an issue of fact.

Western Farm claims that *Pribble* had nothing to do with the issues in the case at bar. This is one way to confess the validity of plaintiff's contention. *Pribble* was directly in point.

The trial court denied Mazzone's motion for summary judgment. This means that genuine issues of material fact exist with respect to Mazzone's negligence and fraud. Western Farm did not challenge these findings by cross-appeal. Neither did Western Farm establish that Mazzone, as its agent, was not acting within the scope and authority of that agency. Accordingly, genuine issues of material fact are present on the liability of Western Farm for the claimed misdeeds of Mazzone. *Pribble, supra;* Appleman, 22 Insurance Law and Practice § 12854 (1947, and 1976 Supp.).

**C.** *Plaintiff is relieved of payment of costs and expenses charged by the court.*

Mazzone disqualified the judge of the Fourth Judicial District and the judge of the First Judicial District was appointed to hear this case. The appointment required the judge to travel to Las Vegas for trial.

On March 19, 1976, Western Farm filed a motion for summary judgment. This motion was set for hearing on April 9, 1976. On April 9, 1976, in open court, Western Farm filed an amended answer. The record is silent on what occurred but summary judgment was not entered. No further notice of hearing was given.

The case came on for jury trial in Las Vegas four months later, on August 9, 1976. During oral argument plaintiff's attorney claimed that he received a telephone call from the court two days before trial saying that the motion for summary judgment had been overruled and to appear for trial. Western Farm claimed that the office received a call to appear for trial. All parties appeared for trial.

A conference of attorneys was held in the court's chambers. The court granted Western Farm's motion for summary judgment and denied Mazzone's motion for summary judgment. Plaintiff did not want to proceed on his claim against Mazzone and requested a continuance pending an appeal of the summary judgment. The court orally granted plaintiff a continuance on condition that plaintiff pay the costs of the jury, and the expenses of the court and the court reporter incident to vacating the trial setting. Under protest and objection, plaintiff agreed to pay the costs and expenses incurred.

Section 16–3–10, N.M.S.A. 1953 (Repl.Vol. 4) reads:

District judges and district court employees shall be allowed per diem and shall be reimbursed for their necessary travel expenses incurred while absent from their principal offices upon official business . . . . These expenses shall be paid from the funds of the district court of the judicial district for which the business is transacted.

The expenses incurred by the district judge and his court reporter "shall be paid from the funds of the district court" of the Fourth Judicial District.

"Costs are a creature of statutes and may not be imposed in the absence of clear legislative authorization." *Reck v. Robert E. McKee General Contractors,* 59 N.M. 492, 503, 287 P.2d 61 (1955). We find no statute or rule of court that imposes upon litigants in a civil case the burden of paying per diem and travel expenses incurred by a district judge and his court reporter. In the absence of a statute or rule of court, such expenses cannot be properly taxed as costs. *State ex rel. Stanley v. Lujan,* 43 N.M. 348, 93 P.2d 1002 (1939).

In 1963, in a criminal case, following conviction of defendant for driving a

motor vehicle while under the influence of intoxicating liquor, the expense incurred by a nonresident judge was properly taxed as costs because it had a direct relation to the case being tried. *City of Portales v. Bell*, 72 N.M. 80, 380 P.2d 826 (1963). However, the statute relating to the reimbursement of such expenses was repealed and in 1968 the present § 16–3–10, supra, was adopted. Payment by the Fourth Judicial District is mandatory. *City of Portales* is not applicable.

The expenses of the district judge and his court reporter were not properly taxed as costs.

■ With reference to the taxation of jury fees as costs, § 21–1–1(38)(h), N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.) reads:

> *Costs.* In civil cases the fees of a jury of six [6] shall be taxed as a part of the costs of the case against the party losing the case. The fees of a jury of twelve [12] shall be paid by the party demanding the same and no part thereof may be taxed as costs.

Under this rule of court, we can find no basis for taxing costs against the plaintiff because no jury was selected to try the case.

In the instant case, a jury panel was in attendance at court. Persons summoned for jury service shall be compensated for their time in travel and attendance. Section 19–1–15, N.M.S.A. 1953 (Repl.Vol. 4). No provision is made for the taxation of these costs. Section 21–1–1(54)(d), N.M.S.A. 1953 (Repl.Vol. 4) reads in part:

> *Costs.* Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course *to the prevailing party* unless the court otherwise directs. . . . [Emphasis added.]

■ "To the prevailing party" means the party who wins the lawsuit. The taxation of costs must await the final determination of the case. The costs of jury attendance in court were not properly taxed against plaintiff.

■ In the instant case, costs and expenses incurred were conditioned on the grant of a continuance to the plaintiff.

"The granting or denying of continuances is a matter within the sound discretion of the trial court, and such actions will be reviewed only where palpable abuse of discretion is demonstrated." *Schmider v. Sapir*, 82 N.M. 355, 358, 482 P.2d 58, 61 (1971). We believe there was a palpable abuse of discretion in denying the continuance, and by conditioning the continuance on plaintiff's payment of costs and expenses.

Plaintiff was ready for trial and plaintiff did not seek a continuance merely for vexation or delay. He was caught by surprise the morning of trial.

■ We construe the motion provisions of our Rules of Procedure in that way which will effect the simplification of litigation. We seek to avoid technical road blocks in order to provide a speedy determination of litigation upon its merits. *Maxey v. Quintana*, 84 N.M. 38, 499 P.2d 356 (Ct. App.1972). "We do not condone the practice of attorneys permitting motions to rest in peace. The disposition of motions is an important aspect of civil procedure and some reasonable time and place for hearing and disposition should be established by district courts. Section 21–1–1(78), N.M.S.A. 1953 (Repl.Vol. 4)." *Atol v. Schifani*, 83 N.M. 316, 319, 491 P.2d 533, 536 (Ct.App. 1971).

■ Plaintiff had a valid reason for a continuance. He did not want to try an agent and principal separately in the event summary judgment was reversed. Western Farm says the trial court gave plaintiff his choice: Go to trial or pay the costs and expenses incurred. Plaintiff made his choice, so make him abide by it. Western Farm adopts the operatic maxim: "Let the punishment fit the crime." To punish plaintiff for a crime not committed by him is not a doctrine acceptable in appellate courts. It does not comport with reason and fairness.

Plaintiff is relieved of the payment of costs and expenses incurred by the presence

of the jury, the court and its reporter the morning of trial.

Reversed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.