593 P.2d 487

**Joseph L. GARCIA, Plaintiff-Appellant,**

v.

**PRESBYTERIAN HOSPITAL CENTER and John Doe I, John Doe II, John Doe III, Defendants-Appellees.**

No. 3376.

Court of Appeals of New Mexico.

March 20, 1979.

Charles G. Berry, Marchiondo & Berry, P. A., Albuquerque, for plaintiff-appellant.

Eric D. Lanphere, Johnson & Lanphere, Albuquerque, for defendants-appellees.

OPINION

WALTERS, Judge.

Plaintiff underwent surgery twice in June and early July 1972 for prostatic cancer, and on July 25, 1972 he was subjected to a third surgery which brought about the complaint filed in this action. He appeals from a summary judgment granted to defendant below.

The trial court, in entering summary judgment, found the following "undisputed" facts:

> Plaintiff, Joseph L. Garcia knew immediately after the catheter in question fell out in July of 1972, that something was wrong with regard to the *treatment and care he was receiving as a hospital patient,* and that on that event plaintiff consulted attorneys in March of 1973 in order to determine his legal position with regard to these events, such that from and after March, 1973, plaintiff was not relying upon any acts or omissions of his treating physician or of any agent or nurse employed by the hospital, and plaintiff, and therefore, the plaintiffs action filed July 13, 1976 is barred by the applicable three (3) year statutes of limitations. (Emphasis added).

Summary judgment is proper if there are no material facts in dispute. It is a remedy to be invoked with caution because its effect is harsh, extreme, and drastic. *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 568 P.2d 589 (1977); *Phillips v. United Serv. Auto. Ass'n.,* 91 N.M. 325, 573 P.2d 680 (Ct.App.1977). It is not to be used as a substitute for trial on the merits, *Pharmaseal, supra;* likewise, the party against whom the summary judgment is asserted must have all reasonable doubts in determining whether any genuine issue exists resolved in his favor, *Skarda v. Skarda,* 87 N.M. 497, 536 P.2d 257 (1975), and in the

most favorable light they will bear supporting his right to a trial on the issues, *Read v. Western Farm Bur. Mut. Ins. Co.,* 90 N.M. 369, 563 P.2d 1162 (Ct.App.1977); *Cortez v. Martinez,* 79 N.M. 506, 445 P.2d 383 (1968); *Coca v. Arceo,* 71 N.M. 186, 376 P.2d 970 (1962).

The three questions raised in this appeal are: (1) whether plaintiff exercised due diligence to learn if negligence had been committed by defendant or its employees which necessitated the third surgical procedure while he was a patient in the hospital; (2) whether it is an an undisputed fact that plaintiff "knew immediately after the catheter in question fell out in July of 1972 that something was wrong with regard to the treatment and care he was receiving as a hospital patient"; and (3) whether a confidential relationship existed between the hospital and its employees, and plaintiff, so as to impose a duty on the hospital to disclose and thereby toll the statute of limitations.

The language used by the trial court in the judgment entered and the argument made by appellees to this court on appeal, clearly indicate that the inquiry below shifted from a question of plaintiff's ignorance that any negligence had been committed, to the issue of plaintiff's counsel's diligence, or lack of it, in dispelling that ignorance once he had been retained by plaintiff. Plaintiff's counsel filed an affidavit, which was before the trial court, in which he stated that he had searched the hospital records and was unable to determine the reason for the third operation; that he sought to obtain that information from plaintiff's attending physician, and it was not until he had filed a claim before the Medical-Legal panel that the physician's attorney permitted the doctor to talk to counsel. That occurred in September of 1974. It was at that time that plaintiff's counsel learned from the doctor that the loss of the catheter was occasioned by negligence of one of the hospital employees, necessitating the third surgery, and not because the patient's body had rejected the catheter, or because any one of numerous other possible physical reactions had occurred. Bearing in mind that plaintiff had repeatedly asked the doctor and the hospital nursing staff why it was necessary that a third operative procedure be undertaken, and that neither the doctor nor the nurses would answer his question, can it be said as a matter of law that there was a lack of due diligence in obtaining information known only to the doctor and the nurses when they refused to divulge that information? Is it not as logical to believe that both plaintiff and his attorney might have felt that the cancerous or weakened condition of the plaintiff, for which he was first operated, had something to do with the loss of the catheter, and that there was no negligence at all?

One of the definitions of "diligence" found in Webster's Third New International Dictionary is as follows:

persevering application; devoted and painstaking application to accomplish an undertaking; assiduity.

It is further there described as "the attention and care required of a person—opposed to negligence." The same source defines "laches" as

slackness or carelessness toward duty or opportunity; negligence, remissness

and

neglect to do a thing at the proper time; undue delay in asserting a right or claiming a privilege—compare STATUTE OF LIMITATIONS.

The opinion letter of the trial court (made a part of the court record) finding that "plaintiff by the exercise of reasonable diligence should have known of the possibility of negligence prior to July 12, 1973," is a finding of laches on the part of plaintiff or his attorneys. *See, e. g., Papanikolas Bros. Ent. v. Sugarhouse Shopping Center Assoc.,* 535 P.2d 1256 (Utah 1975); *Oxford v. Estes,* 229 Ala. 606, 158 So. 534 (1934); *Dexter & Carpenter v. Houston,* 20 F.2d 647 (4th Cir. 1927). "Laches is lack of diligence." *Poka v. Holi,* 44 Haw. 464, 357 P.2d 100 (1960).

In discussing the theory of laches in *Cave v. Cave,* 81 N.M. 797, 802, 474 P.2d 480, 485 (1970), the court quoted from *Morris v. Ross,* 58 N.M. 379, 271 P.2d 823 (1954), as requiring four elements to establish laches:

(1) Conduct on the part of the defendant, * * * giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, * * *;

(2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;

(3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and

(4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.

It was said in *Cave, supra,* that "[t]he duty to proceed arises 'when the fraud is known, or ought to have been known.'" That case also indicates that a finding of laches, "not favored absent inexcusable neglect," must be based upon the evidence and inferences therefrom which are submitted to the fact finder. *Pratt v. Parker,* 57 N.M. 103, 255 P.2d 311 (1953), as well as the foreign cases above cited and innumerable others, make it clear that whether or not laches is present depends upon the facts and circumstances of the case under consideration. If there was no factual reason which would excuse plaintiff's delay in filing his complaint, then summary judgment was proper. The affidavit of plaintiff's attorney raised an issue of excuse, however, going to the layman's ignorance of a medical condition, the absence of information in the medical records, and the chill of silence from those who might have revealing information, sufficient to raise a factual issue of excusable delay.

We have searched the record, which consists of depositions and affidavits, and have been unable to find any intimation by plaintiff that he knew "something was wrong with . . . the treatment and care he was receiving as a hospital patient" on July 24, 1972. Certainly he knew *something* was wrong. He observed the nurses' and doctor's consternation at the time the catheter fell out, and the doctor's insistence that he would have to return to surgery. But despite plaintiff's questioning of the doctor and the nurses regarding the necessity for the third surgery, the only answers he got were, "don't worry, everything is going to be all right . . . we're going to get you well," from the doctor; and by the nurses he was told that they didn't know why the surgery was necessary, "to ask the doctor." Plaintiff never was told what the third surgery was intended to accomplish or why it was necessary. He was no more aware until September 1974 that something was wrong with his treatment and care than he was aware that his own physical condition might have forced the loss of the catheter and triggered the third surgery. The record is simply barren of any evidence of knowledge on the part of the plaintiff with respect to the instigating cause for the operation performed on July 25, 1972. The ultimate fact found by the trial court is not "undisputed" simply because there is no support whatever for it in the record.

Finally, if there was justifiable delay in filing the complaint which rests on defendant's duty to disclose and their failure to do so, defendants claim on appeal that there is no such duty existing between a hospital or its employees and a patient. If this is so, plaintiff may not rely on defendants' failure to divulge information as an excuse to overcome the defense of laches or lack of due diligence, or for tolling the statute of limitations during the period of such nondisclosure.

Fiduciary relationship, confidential relationship, constructive fraud, and fraudulent concealment are all parts of the same concept. *See Hardin v. Farris,* 87 N.M. 143, 530 P.2d 407 (Ct.App.1974); *Barber's Super Markets, Inc. v. Stryker,* 84 N.M. 181, 500 P.2d 1304 (Ct.App.1972); *Snell v. Cornehl,* 81 N.M. 248, 466 P.2d 94 (1970); *Giovannini v. Turrietta,* 76 N.M. 344, 414 P.2d 855 (1966); *Velasquez v. Mascarenas,* 71 N.M 133, 376 P.2d 311 (1962); *Everett v. Gilliland,* 47 N.M. 269, 141 P.2d 326 (1943); *In re Trigg,* 46 N.M. 96, 121 P.2d 152 (1942);

*State Tr. & Sav. Bank v. Hermosa Land & Cattle Co.,* 30 N.M. 566, 240 P. 469 (1925); *Cardenas v. Ortiz,* 29 N.M. 633, 226 P. 418 (1924). An analysis of all of those cases reveals that the nature of the relationship which creates a duty to disclose, and a breach of which duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another who, by reason of a specific skill, knowledge, training, judgment, or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. Once the relationship exists "there exists a duty to speak . . . [and] mere silence constitutes fraudulent concealment." *Hardin v. Farris, supra.*

■ In the common knowledge of man, patients submit themselves to the skills and arts, proficiency and expertise, of hospital personnel, once they become confined to a hospital. Indeed, most frequently they have no real choice in the matter; they are physically and intellectually unable to do much more than submit and rely upon the medical superiority and ethical propriety of their attendants. We have no difficulty in declaring a confidential relationship in the standing of a hospital to it patients. Coexistent with that relationship, therefore, is the hospital's obligation to divulge all material facts to its patients. The effect of nondisclosure is as Judge Hernandez wrote in *Hardin v. Farris, supra,* at 87 N.M. 146, 530 P.2d 410:

> . . . [W]here a party against whom a cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment . . . or where the cause is known to the injuring party, but is of such character as to conceal itself from the injured party, . . . the statutory limitation on the time for bringing the action *will not begin to run* until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered. (Emphasis added).

■ There was an issue of fact regarding the diligence of plaintiff which, absent a duty on the hospital, should have been presented to the fact finder, thus precluding the entry of summary judgment. Our decision, however, that the hospital had a duty to disclose, and the tolling effect arising from its failure to disclose, disposes of this appeal on the basis that the statute was tolled during the period of nondisclosure. Plaintiff's complaint was filed well within the three-year period following September 10, 1974. *Hardin v. Farris, supra;* § 37–1–8, N.M.S.A. (1978).

The summary judgment is reversed and the case is remanded with directions to reinstate it upon the trial court's docket.

IT IS SO ORDERED.

LOPEZ, J., concurs.

ANDREWS, J., dissents.

ANDREWS, Judge (dissenting).

I dissent.

In my opinion, the district court properly granted summary judgment where the issue is the applicability of the three-year statute of limitation for tort. Section 37–1–8, N.M.S.A.1978. In New Mexico, a cause of action for personal injuries for malpractice begins to run, not from the time of the malpractice, *see Roybal v. White,* 72 N.M. 285, 383 P.2d 250 (1963), but from the time the injury manifests itself in a physically objective manner and is ascertainable. *Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (Ct. App.1977), cert. denied 90 N.M. 636, 567 P.2d 485 (1977).

The Court in its judgment, found as follows:

> Plaintiff, Joseph L. Garcia, knew immediately after the catheter in question fell out in July of 1972 that something was wrong with regard to the treatment and care he was receiving as a hospital patient and that on that event plaintiff consulted attorneys in March of 1973 in order to determine his legal position with regard to these events, such that from and after March, 1973, plaintiff was not relying upon any acts or omissions of his treating physician or of any agent or

nurse employed by the hospital, and plaintiff, and therefore, the plaintiff's action filed July 13, 1976 is barred by the applicable three (3) year statute of limitation.

Clearly, plaintiff's injury manifested itself in a physically objective manner and was ascertainable from the date the catheter fell out in July 1972. The limitation period should begin to run from that date and no later. *See Yoshizaki v. Hilo Hospital,* 50 Haw. 1, 427 P.2d 845 (1967).

To hold otherwise requires reliance on the only exception to the rule—that of fraudulent concealment. Pursuant to this exception, the limitation period is tolled where a party against whom a cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge of that fact. *Hardin v. Farris,* 87 N.M. 143, 530 P.2d 407 (Ct.App.1974). However, the fraudulent concealment exception applies only if a confidential relationship exists between the injured party and the one against whom the cause of action accrues. Such a relationship has been established in many diverse classes of cases, including corporate officer and shareholder or creditor, doctor and patient, dentist and patient, druggist and patient, nurse and patient, trustee and beneficiary, and family members. *See* Annot. 45 A.L.R.3d 630 (1972) and Annot. 68

A.L.R. 176 (1930). However, I find no case, except under a statutory scheme specifically establishing the relationship, where the confidential relationship is held to exist between a patient and hospital. *See Crossett Health Center v. Croswell,* 221 Ark. 874, 256 S.W.2d 548 (1953); *Yoshizaki v. Hilo Hospital, supra,* Annot., 89 A.L.R.2d 1180 (1963). To assume such a relationship where there is no evidence that a continuous trust is reposed by one person in the skill and integrity of the other, *Else v. Fremont Methodist Church,* 247 Iowa 127, 73 N.W.2d 50 (1955), is to place an unjustified burden upon a hospital.

Where mere silence constitutes fraudulent concealment, *Hardin v. Farris, supra,* there should be a clear showing that a confidential relationship exists which imposes a duty to speak and that the essential facts of the right of action are known to the injuring party and unknown to the injured party. Such is not the case here.

The summary judgment should be affirmed.