McGEE, Justice.
This is an appeal from a summary judgment granted in favor of American National Bank. The question is whether the evidence raises an issue of fact whether the joint venture known as Southwestern Cinema was dissolved before American National Bank lent it $360,000. The trial court found that the joint venture had not dissolved at the time of the loan and granted the Bank’s motion for summary judgment against the joint venture, Southwestern Cinema; the joint venture’s partners, McCombs, Thomas, and PGR Investment Company; and the individual partners of PGR Investment Company, Porter, Gonzalez, Rogers, and Dahlman, jointly and severally. The court of appeals affirmed the trial court judgment, holding that Thomas and McCombs had not effectively withdrawn their participation in Southwestern Cinema and, therefore, were liable on the note to American National Bank. 694 S.W.2d 543. We reverse the judgment of the court of appeals and remand the cause to the trial court. An issue of fact exists whether Thomas and McCombs effectively withdrew from the joint venture and dissolved the partnership prior to American National Bank’s loan to Southwestern Cinema.
Southwestern Cinema was a joint venture organized by Charles F. Thomas, B.J. McCombs, and PGR Investment Company in 1980 for the purpose of purchasing and distributing two motion pictures. PGR Investment Company is a partnership composed of four individuals: Charles R. Porter, Jr., Rick Rogers, Terrell W. Dahlman, and Celso Gonzalez. Gonzalez is the managing partner of PGR Investment Company and the managing venturer in Southwestern Cinema. According to the Southwestern Cinema joint venture agreement, Gonzalez had the express authority to borrow up to $500,000 to finance the venture. The distributed shares of the venturers are: McCombs — 33 ⅛%; Thomas — 33 ⅛%; and PGR Investment Company — 33⅛%, owned collectively by its partners.
The initial funding for Southwestern Cinema came from several sources and was ultimately consolidated in 1981 in a loan of $360,000 from Parkdale State Bank in Corpus Christi, Texas. Thomas and McCombs admit that they were partners in Southwestern Cinema at that time and acknowledge they were individually liable as such for the Parkdale Bank indebtedness.
On May 21, 1982, shortly before the Parkdale note matured, Gonzalez negotiated a new loan with American National Bank on behalf of Southwestern Cinema and used the proceeds from this loan to pay off the Parkdale State Bank loan. Later, when the American National Bank loan became due and Southwestern Cinema failed to timely pay the indebtedness due, the Bank gave notice and demanded payment of the note from Southwestern Cinema and its partners, individually. This suit was filed to collect on the note.
Thomas and McCombs allege they are not liable on the note to American National Bank because they had effectively dissolved the joint venture prior to the time the loan was negotiated. Article X of the Southwestern Cinema joint venture agreement specifically provides that the venture shall be dissolved by agreement of ventur-ers having 66⅝% interest in the capital account of the venture. It is undisputed that Thomas and McCombs own 66%% of the joint venture. The agreement does not specify any formalities to effect a dissolution. Therefore, by the terms of the joint venture agreement, the venture could be dissolved by Thomas and McCombs agreeing to do so.
In their depositions, both Thomas and McCombs state that they came to a mutual agreement early in 1982 to get out of the venture because of their inability to obtain information from Gonzalez with regard to their interests in the joint venture. Thom- ’ as and McCombs contend they dissolved *323 the joint venture when Thomas told Gonzalez, the managing partner of PGR Investment Company and the managing venturer of Southwestern Cinema, prior to May 21, 1982, that he and McCombs wanted out of the joint venture. TEX.REV.CIV.STAT. ANN. art. 6132b, § 31 (Vernon 1970). They further contend that subsequent to Thomas telling Gonzalez that he and McCombs wanted out, it was agreed that Thomas and McCombs would assign their interest in the joint venture to Gonzalez in his individual capacity.
American National Bank, however, does not characterize that conversation as including a notice of dissolution. Rather, American National Bank characterizes it simply as an assignment of Thomas’s and McCombs’s interest in the joint venture to Gonzalez in his individual capacity. By characterizing the conversation simply as an assignment, the Bank reaches the conclusion that a dissolution did not occur. TEX.REV.CIV.STAT.ANN. art. 6132b, § 27(1) (Vernon 1970).
While it is true that an assignment of interest in a partnership by a partner will not cause a dissolution of the partnership itself, American Bank’s reliance on section 27 is misplaced. That section states that a:
conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee ... to interfere in the management of administration of the partnership business or affairs; it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled_ (emphasis added).
When a partner assigns his rights in the partnership, but the remaining partners have not agreed to admit the assignee as a partner, this section assures that the as-signee does not become a partner without the consent of the remaining partners in contravention of section 18 of the Uniform Partnership Act (hereinafter UPA). TEX.REV.CIV.STAT.ANN. art. 6132b, § 18(l)(g) (Vernon 1970). By distinguishing between assignees of a partnership interest and the admission into the partnership of new partners, section 27(1) operates to allow conveyance of a right to receive profits without giving the assignee an interest in the firm’s assets. See Wester & Co. v. Nestle, 669 P.2d 1046, 1048 (Colo.App.1983); Rapoport v. 55 Perry Co., 50 A.D.2d 54, 376 N.Y.S.2d 147 (1975). Hence, the provision that the partnership is not dissolved when a partner assigns his interest in the partnership merely protects the original parties from an unwanted partner or from a finding of partnership from the fact of the assignee’s receipt of a share of the profits. See TEX.REV.CIV.STAT.ANN. art. 6132b, § 7(4) (Vernon 1970). However, section 27 and Thomas’s and Gonzalez’s discussion of assignment is not dispositive of whether a dissolution occurred.
In contrast, section 29 of the UPA provides that dissolution of a partnership is the change in relation of the partners caused by any partner ceasing to be associated in the carrying on of the business. This section is consistent with the concept expressed in section 31 of the UPA, upon which Thomas and McCombs rely, which provides that dissolution is caused by "the express will of any partner_” TEX.REV.CIV.STAT.ANN. art. 6132b, §§ 29, 31 (Vernon 1970). Thus, no party is compelled to continue as a partner when, by his express will, he chooses to withdraw.
In his deposition, Thomas states he informed Gonzalez, prior to May 21, 1982, of his and McCombs’s desire to “get out” of Southwestern Cinema; that Gonzalez agreed; and that Gonzalez told him he and McCombs could consider themselves “out of the deal.” For summary judgment purposes, the court must accept this statement as true. Wilcox v. St. Mary’s University of San Antonio, 531 S.W.2d 589 (Tex.1975).
Pursuant to section 29, when one partner withdraws from the business, the partnership is dissolved as to that party, though the remaining partners may elect to *324 continue operating as a partnership. McKellar v. Bracewell, 473 S.W.2d 542 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). Other states have applied this rule under the Uniform Partnership Act in the context of a dissolution and transfer of interest occurring at the same time. When both occur at the same time, courts have been willing to give effect to the express will of a partner to dissolve the partnership. See Wester & Co. v. Nestle, 669 P.2d 1046 (Colo.App.1983); Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970). Therefore, the conversation that followed the notice of dissolution, concerning the assignment of Thomas’s and McCombs’s partnership interest to Gonzalez is legally irrelevant to the question of whether a dissolution occurred.
However, American National Bank asserts that even assuming that Thomas told Gonzalez of his and McCombs’s intent to get out of Southwestern Cinema, notice to Gonzalez was insufficient to constitute notice to PGR Investment Company. American National Bank contends that because Thomas’s assignment of his and McCombs’s interest in Southwestern Cinema to Gonzalez was in Gonzalez’s personal capacity, then any notice of dissolution he received was also in his personal capacity and, therefore, does not operate as notice to the joint venture. Rather, American National Bank argues that Thomas and McCombs were required to give notice to each member of PGR Investment Company before there could be an effective dissolution.
Section 12 of the UPA, however, provides that “notice to any partner of any matter relating to partnership affairs ... operates as notice to or knowledge of the partnership.” TEX.REV.CIV.STAT.ANN. art. 6132b, § 12 (Vernon 1970). Notice of dissolution is a matter relating to partnership affairs. In this case, Gonzalez was a partner at the time he received notice, if any, of the dissolution. If Thomas told Gonzalez that he and McCombs no longer wanted to be involved in the venture and wanted out, this was notice to PGR Investment Company. There is no requirement that notice of dissolution be communicated to each and every member of a joint venture. But even if there were, the only partner left in Southwestern Cinema was PGR Investment Company. Notice to one of the members of PGR Investment Company is sufficient to constitute notice to that partnership of the dissolution of Southwestern Cinema.
In Green v. Waco State Bank, 78 Tex. 2, 14 S.W. 252 (Tex.1890), this court considered what was required for an effective dissolution and held it was not necessary that there be a distinct agreement between all the members at the same time that a dissolution shall take place at a certain time. Rather, this court held that any of the partners in the firm could have dissolved it at any time and that the notice to the other partners could be in any manner. The Uniform Partnership Act, which has been adopted by 48 states, including Texas, allows dissolution of a partnership by the express will of a partner. Other states have held this to mean that dissolution is accomplished by giving notice to the other partners and that no particular form of notice is required. See, e.g., Wester & Co. v. Nestle, 669 P.2d 1046 (Colo.App.1983) (withdrawal of partner); Babray v. Carlino, 2 Ill.App.3d 241, 276 N.E.2d 435 (1971) (verbal agreement to dissolve); Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970) (mutual consent to dissolve evidenced by acts); Nicholes v. Hunt, 273 Or. 255, 541 P.2d 820 (1975) (telephone call advising partner that business relationship was at an end was sufficient notice of dissolution); Timmermann v. Timmermann, 272 Or. 613, 538 P.2d 1254 (1975) (oral notice).
Therefore, we conclude that Thomas’s deposition testimony raised a question of fact whether dissolution had occurred prior to May 21, 1982. Finding that a fact issue does exist which would preclude a summary judgment on behalf of American National Bank, we reverse the judgment of the court of appeals and remand the cause to the trial court.